No. 89-114

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

DALE KINNIBURGH, KEITH KISER,
ROBERT J. WAGAR, and B.B. & K., INC.,

Plaintiffs and Appellants,

-v-

DONALD A. GARRITY, and GARRITY,
KEEGAN & BROWN, a law firm and
partnership,

Defendants and Respondents.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Thomas B. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Richard P. DeJana, Kalispell, Montana

For Respondent:

Cresap S. McCracken; Church, Harris, Johnson &
Williams; Great Falls, Montana

Submitted on Briefs: July 13, 1990

Decided: September 6, 1990

Filed:

FILED
90 SEP 6 AM 11 00
ED SMITH, CLERK
MONTANA SUPREME COURT

/Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

The plaintiffs appeal the judgment of the Montana First Judicial District Court, Lewis and Clark County, sitting without a jury, entering judgment in favor of the defendants on the plaintiffs' claim of legal malpractice. The claim arises from their earlier suit against Burlington Northern (BN) that involved a series of timber contracts between the plaintiffs and BN in which the defendants here represented the plaintiffs. The District Court entered judgment in favor of the defendants on the grounds that plaintiffs' underlying suit did not state a claim against BN and therefore the admitted negligence of Garrity did not proximately cause any damage to the plaintiffs. We affirm.

The plaintiffs attempt to frame several issues as the basis of appeal. We consolidate these issues into the following:

(1) Did the District Court err in holding that the plaintiffs' original complaint against BN failed to state a claim for relief?

Determination of this issue will enable us to dispose of the principal issue on appeal:

(2) Did the District Court err in holding that the admitted negligence of Garrity and the alleged misrepresentations of Garrity concerning the plaintiffs' chances of success were not the proximate cause of any damage claimed by the plaintiffs?

The plaintiffs are independent businessmen who routinely entered into contracts with BN to harvest timber on BN lands, build roads to accommodate such harvest, and haul logs to lumber mills.

2

Contracts were for individual logging jobs or related operations. The contracts were let to bid or negotiated depending upon what BN thought was best for its interests on a particular job.

In 1979, the plaintiffs were part of a group of independent logging contractors who, in apparent dissatisfaction with BN, formed an informal organization and attempted to pressure BN into changing some of its contracting procedures. The group met with BN to discuss these issues, however, nothing much happened.

The plaintiffs contend that in retaliation for this organization effort they were not offered further contracts by BN. They hired the defendant Garrity to sue BN in federal court primarily on theories of breach of the implied covenant of good faith and fair dealing in the employment relationship, deprivation of civil rights under 42 U.S.C. § 1983, and interference with contract.

Garrity took the case on a contingent fee basis and filed suit on behalf of the plaintiffs on January 25, 1982. At the outset he thought that the civil rights claim had the best chance of success. After this Court's decision in Gates v. Life of Montana (1982), 638 P.2d 1063, giving at-will employees expanded employment protections, Garrity thought this theory might be expanded to cover the plaintiffs' situation, and this became his principal legal theory.

Garrity told Kiser and the other plaintiffs that they had a good chance of success in their suit against BN, but that the "bad faith" aspects of the suit were dependent upon a favorable ruling

3

from the trial judge. The findings indicate that if plaintiff Kiser had not been assured of a reasonable chance of success by Garrity, he would not have authorized the filing of the lawsuit and he would have gone back to work as he felt that a fruitless lawsuit endangered his employability with other timber operators. The United States District Court for the District of Montana, Great Falls Division, ultimately disposed of the case in its entirety by entering judgment in favor of BN on all claims on January 4, 1984.

An attempted appeal of this judgment was never decided on its merits. Garrity mistakenly counted the 30 day appeal period as ending on February 4, 1984, a Saturday, when the time deadline was actually February 3, 1984, a Friday. As a result, Garrity filed the required Notice of Appeal one day late.

The plaintiffs filed a malpractice suit against Garrity alleging negligence and misrepresentation on February 14, 1985. The action was tried without a jury and judgment was entered in favor of the defendants. A motion to amend the findings of fact and conclusions of law was filed and the court issued an order granting a portion of the amendments. The District Court concluded that there were no claims under the Civil Rights Act or under the theory of contractual interference, and that the claims of breach of the implied covenant of good faith and fair dealing were barred under Nordlund v. School District No. 14 (1987), 227 Mont. 402, 738 P.2d 1299. The plaintiffs now appeal the judgment in favor of the defendants raising the aforementioned issues.

I.

On appeal the plaintiffs do not contest the invalidity of the civil rights claims in their case against BN. However, they do argue that the District Court erred in its interpretation of Nordlund as precluding recovery on their claims for breach of the implied covenant of good faith and fair dealing. They also argue that our recent decision clarifying causes of action for breach of the implied covenant, Story v. City of Bozeman (1990), ___ Mont. ___, 791 P.2d 767, 47 St.Rep. 850, would afford them a cause of action under this theory if we would allow the parties to argue the present facts under the criteria adopted in Story.

Nordlund is clearly dispositive of the underlying claim against BN for breach of the implied covenant. In Nordlund the plaintiff school teacher alleged that the defendant school district breached the implied covenant of good faith and fair dealing by arbitrarily and capriciously not renewing his employment contract. After being given a series of two year contracts, the school board voted to give superintendent Nordlund a one year employment contract. Under the law applicable at the time, "the nature and extent of an implied covenant of good faith and fair dealing is measured in a particular contract by the justifiable expectations of the parties." Nicholson v. United Pacific Insurance (1985), 219 Mont. 32, 41, 710 P.2d 1342, 1348. We held in Nordlund that under the express, clear, and unambiguous language of the contract, the plaintiff could have no justifiable expectation of continued employment. Nordlund, 738 P.2d at 1302, citing Maxwell v. Sisters of Charity of Providence (D.Mont.1986), 645 F.Supp. 937, 939.

5

Here, BN offered the plaintiffs, independent contractors, contracts for discrete logging jobs or related tasks, by taking bids or negotiating the contract terms. These contracts were for individual jobs and cannot be the basis for a continued expectation that BN would offer such contracts to an independent contractor in the future. BN's conduct cannot be characterized as arbitrary, capricious, or unreasonable under the applicable law where plaintiffs are independent contractors with no express contract of employment, and were threatening to sue BN.

Plaintiffs also allege that they would have a cause of action in tort against BN under the current law defining breach of the implied covenant as set forth in Story v. City of Bozeman, supra. Even if Story were applicable to this case, the plaintiffs did not have a case against BN. Under Story, the following "special relationship" criteria must be met for a plaintiff to maintain a cause of action in tort for breach of the implied covenant:

> (1) the contract must be such that the parties are in inherently unequal bargaining positions; [and] (2) the motivation for entering the contract must be a non-profit motivation, i.e., to secure peace of mind, security, future protection; [and] (3) ordinary contract damages are not adequate because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party "whole"; [and] (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability.

791 P.2d at 776; citing Wallis v. Superior Court (1984), 160 Cal.App.3d 1109, 207 Cal.Rptr. 123, 129. Substantial evidence of each and all of these essential elements must be presented to the

6

court, or the court will direct that there is no special relationship. Story, 791 P.2d at 776. Here, the plaintiffs are independent businessmen dealing at arms-length in a commercial setting and negotiating contracts for profit on a job-by-job basis. No special relationship exists.

Moreover, for a plaintiff to maintain a cause of action for breach of the implied covenant, whether it is based in contract or based on the special relationship criteria giving rise to a tort, he must first show breach of the "honesty in fact" standard:

> The conduct required by the implied covenant of good faith and fair dealing is honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.

Section 28-1-211, MCA. Story, 791 P.2d at 775. There is no evidence in the original suit that BN was not honest in fact or failed to observe reasonable commercial standards as a means of depriving the plaintiffs of the benefit of their contracts. See Story, 791 P.2d at 775.

## II.

The plaintiffs also contend that the District Court erred in concluding that the missed appeal caused no actual damage to the plaintiffs, because the court deemed the contractual interference claim to be a valid claim. A close examination of the record demonstrates that this contention is without merit. In finding of fact no. 108 the court found that Garrity, not the court, subjectively deemed the contractual interference claim to be valid. The court later concluded that regardless of Garrity's subjective belief in the claim's validity the plaintiffs had failed to state

any valid claims for relief against BN, and thus had no claim for relief against Garrity.

We agree. To establish a professional negligence action the plaintiffs must prove that Garrity breached a duty and that "but for" such negligence they would have been successful in the prosecution of their claims. Lorash v. Epstein (1989), 236 Mont. 21, 24, 767 P.2d 1335, 1337; Carlson v. Morton (1987), 229 Mont. 234, 238, 745 P.2d 1133, 1136. Because the plaintiffs had no legal claim for relief against BN they experienced no damage as the result of the admitted negligence of Garrity in missing the appeal date. Lack of any damages and direct causation is fatal to their malpractice claim.

Finally, plaintiffs allege that Garrity misrepresented their chances of success in winning the lawsuit. By stipulation, the parties agreed that

> It is a breach of accepted standards of the Montana legal profession for an attorney to misrepresent to a client or potential client the attorney's evaluation of the chances of success or failure of a proposed lawsuit if the attorney knows that such misrepresented evaluation will be the deciding factor in the mind of the client in deciding to pursue or abandon the proposed litigation.

Transcript, p. 253. While plaintiffs contend that Garrity should have known that the chances for success were poor and therefore misrepresented such chances, the stipulation clearly applies only if the attorney forms one opinion regarding the chances of success or failure and communicates another one to the client. The District Court made extensive factual findings describing Garrity's evaluation of the plaintiffs' claims. The Court specifically noted

8

that "Garrity believed in the case to the point of risking his time and effort for the chance of a contingent fee." Nowhere did the District Court find or conclude that Garrity misrepresented <u>his evaluations</u> to the plaintiffs. Plaintiffs failed to meet their burden of proof on this matter.

Plaintiffs suffered no damage as the result of Garrity's admitted negligence nor did Garrity misrepresent to plaintiffs his evaluation of their chances for success. The judgment of the District Court is

**AFFIRMED.**

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice William E. Hunt, Sr., did not participate.

Justice John C. Sheehy concurs specially:

I concur in the result here and especially concur that in order to state a claim against an attorney for malpractice, the client must show that except for the alleged malpractice, the result of the suit would have been in favor of the client. This is the holding in Brosil v. Stockton (1970), 105 Ariz. 574, 468 P.2d 933, 936, and my dissent in R. H. Schwartz v. Hanrahan (1983), 207 Mont. 105, 672 P.2d 1116, 1118.

I would hold that the claims of the plaintiffs were barred under our decision in Nordlund v. School District No. 14 (1987), 227 Mont. 402, 738 P.2d 1299, as the opinion here states. Since I dissented in Story v. City of Bozeman (1990), ___ Mont. ___, 791 P.2d 767, I see no application of that case to the present case.

John C. Sheehy
                        Justice