No. 02-646

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 263

IN RE THE MARRIAGE OF

LORNEY JAY DEIST,

       Petitioner and Appellant,

   and

CYNTHIA WYNN DEIST,

       Respondent and Respondent.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and for the County of Flathead, Cause No. DR-94-422B,
The Honorable Katherine R. Curtis, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Shelly F. Brander, Kaufman, Vidal & Hileman, P.C., Kalispell, Montana

      For Respondent:

          James D. Moore, Attorney at Law, Kalispell, Montana

Submitted on Briefs:  April 17, 2003

Decided:  September 25, 2003

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1     The marriage between Appellant Lorney Jay Deist and Respondent Cynthia Wynn Deist was terminated by dissolution. Cynthia subsequently filed a motion for an order to show cause against Lorney in the Eleventh Judicial District Court, Flathead County, asserting that Lorney should be held in contempt of court for failing to comply with the Dissolution Decree. The District Court found that Lorney failed to comply with the Dissolution Decree, but deferred determination of whether he was in contempt of court for sixty days. Lorney appeals. We affirm the judgment of the District Court.

¶2     We restate the issues on appeal as follows:

¶3     1.  Are Cynthia's claims barred by laches?

¶4     2.  Did the District Court err in requiring Lorney to pay ninety-two percent of Courtney's uncovered medical expenses?

¶5     3.  Did the District Court abuse its discretion when it awarded attorney's fees and costs to Cynthia?

¶6     4.  Is Cynthia entitled to recover attorney's fees and costs on appeal?

**BACKGROUND**

¶7     Lorney and Cynthia were married on June 16, 1972; they have two daughters, Courtney and Lacy. On September 6, 1994, Lorney filed a petition for dissolution, seeking to dissolve his marriage to Cynthia.

¶8     In early 1996, Cynthia was advised by her family dentist, Dr. Ken Madsen, that Courtney had a unique dental problem involving an impacted cuspid. As a result, Courtney

2

was referred to Dr. Michael Stebbins. Dr. Stebbins recommended that Courtney undergo orthodontic treatment to address her dental problem. These facts were then made known to Lorney. At the request of Lorney, Cynthia agreed to obtain a second opinion regarding Courtney's need for orthodontic treatment. In May of 1996, Courtney was examined by Dr. Robert Windauer. Dr. Windauer concurred with the recommendations of Dr. Madsen and Dr. Stebbins regarding Courtney's dental problem. On May 8, 1996, Dr. Windauer arranged a payment schedule for Courtney's treatment. At Cynthia's request, Dr. Windauer also wrote a letter, explaining the treatment and the reasons for it. Both the payment plan and the letter were provided to Lorney.

¶9     The District Court dissolved the marriage between Lorney and Cynthia on May 22, 1996. The Decree of Dissolution required that Lorney continue to provide health insurance coverage for his children, and that he pay ninety-two percent of any uncovered "medical and related expenses" incurred by his children.

¶10     The dental treatment referred to in Dr. Windauer's letter was subsequently performed by Dr. Windauer and Dr. James Ronald in August of 1996. The part of Dr. Windauer's bill not covered by Lorney's insurance amounted to $2,660.00. The uninsured part of Dr. Ronald's bill was $363.65.

¶11     During Lorney and Cynthia's marriage, Courtney was prescribed contact lenses to correct a vision problem. In 1996, Courtney required replacement lenses, prompting Cynthia to take Courtney to Wal-mart Vision Center to purchase replacement lenses. The part of the bill from Wal-mart Vision Center not covered by Lorney's insurance was $239.60.

¶12 Approximately six years later, on March 11, 2002, Cynthia filed a motion for an order to show cause, asserting that Lorney should be held in contempt of court for failing to comply with the Decree of Dissolution. Specifically, Cynthia alleged that Lorney failed to: (1) pay ninety-two percentage of Courtney's uncovered medical expenses; and (2) pay child support. On March 12, 2002, the District Court issued an order, requiring Lorney to show cause as to why he should not be held in contempt of court.

¶13 Cynthia ultimately withdrew her claim for unpaid child support, leaving the remaining claim against Lorney for Courtney's uncovered medical expenses. The District Court conducted a hearing on Cynthia's motion on May 15, 2002. On September 4, 2002, the District Court issued findings of fact and conclusions of law, ordering Lorney to reimburse Cynthia for: (1) ninety-two percent of Courtney's medical expenses; and (2) part of her attorney's fees and costs related to the contempt proceeding. The District Court further stated that:

> A determination relative to whether [Lorney] has acted in contempt of this Court shall be deferred for sixty (60) days. In the event [Lorney] pays the sums ordered above, said contempt shall be dismissed. In the event [Lorney] fails to make such payment, [Cynthia] shall file with the Court an Affidavit, and the Court shall enter appropriate findings, conclusions and Order respecting said contempt.

Lorney appealed the District Court's findings of fact and conclusions of law on October 2, 2002.

## STANDARD OF REVIEW

¶14 We review a district court's findings of fact to determine whether the findings are

4

clearly erroneous. *Kovarik v. Kovarik*, 1998 MT 33, ¶ 20, 287 Mont. 350, ¶ 20, 954 P.2d 1147, ¶ 20. A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if our review of the record convinces us that the district court made a mistake. *Kovarik*, ¶ 20. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *In re Marriage of Kovash* (1995), 270 Mont. 517, 521, 893 P.2d 860, 863.

¶15     This Court will not overturn a district court's award of attorney's fees absent an abuse of discretion. *In re Marriage of Steinbeisser*, 2002 MT 309, ¶ 18, 313 Mont. 74, ¶ 18, 60 P.3d 441, ¶ 18. The test for abuse of discretion is whether the trial judge acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice. *Steinbeisser*, ¶ 18.

## DISCUSSION

### ISSUE 1

¶16     Are Cynthia's claims barred by laches?

¶17     Laches is an equitable concept that applies to situations where there has been a delay of such a duration as to render enforcement of the asserted right inequitable. *Filler v. Richland County* (1991), 247 Mont. 285, 290, 806 P.2d 537, 540; *Gue v. Olds* (1990), 245 Mont. 117, 120, 799 P.2d 543, 545. However, laches is not simply a matter of elapsed time, it is also a question of the inequity of permitting a claim to be enforced. *Filler*, 247 Mont. at 290, 806 P.2d at 540. That is, for laches to be applied, the court must find lack of diligence by the party against whom the defense is asserted and prejudice to the party

5

asserting the defense. *Gue*, 245 Mont. at 120, 799 P.2d at 545. As such, each case must be determined according to its own particular circumstances. *Gue*, 245 Mont. at 120, 799 P.2d at 545.

¶18  Lorney argues that laches should bar Cynthia's claim for reimbursement of Courtney's uncovered medical expenses because Cynthia waited six years to file her motion. As noted above, however, Lorney received a payment plan and a letter from Dr. Windauer in May of 1996. Lorney then submitted the plan to his insurance provider, and insurance coverage was denied. Lorney was aware that Courtney received the recommended orthodontic treatment. The Dissolution Decree specifically required Lorney to pay ninety-two percent of his children's uncovered medical expenses. Thus, during the span of six years, Lorney was aware that: (1) Courtney underwent orthodontic treatment; (2) the treatment resulted in a bill of $2,660.00 for Dr. Windauer's services; (3) Dr. Windauer's bill was not covered by his insurance; and (4) he was obligated to pay a portion of Dr. Windauer's bill. Despite his awareness of the above, Lorney has not paid his percentage of Dr. Windauer's bill. The District Court determined that Lorney was not prejudiced by Cynthia's delay and therefore the laches defense did not apply. We agree.

¶19  As we noted above, for laches to be applied, the court must find lack of diligence by the party against whom the defense is asserted and prejudice to the party asserting the defense. *Gue*, 245 Mont. at 120, 799 P.2d at 545. Although the six year hiatus between the delivery of the medical care and initiation of the contempt proceeding is unusual, Lorney simply suffered no prejudice. He was aware of the need for the treatment, received the bills

6

in question in a timely fashion and submitted the bills to his insurance carrier. He later learned that his insurance claim was denied, and yet failed to comply with his obligations under the Decree. Therefore, we conclude that the District Court correctly determined that laches did not bar Cynthia's claim for ninety-two percent of Dr. Windauer's bill.

¶20 The same rationale applies regarding Courtney's vision expenses. Lorney was aware that Courtney wore contact lenses prior to the dissolution. In 1996, Courtney required replacement lenses, resulting in a bill of $239.60 from Wal-mart Vision Center. Lorney does not contend that he was unaware that this bill was incurred, but nevertheless argues that he should not be responsible because of Cynthia's tardy reimbursement claim. The District Court determined that Lorney suffered no prejudice and we again agree. As such, laches does not bar Cynthia's claim for ninety-two percent of Wal-mart Vision Center's bill.

¶21 On the other hand, the District Court treated Dr. Ronald's bill differently and correctly so. Dr. Ronald assisted Dr. Windauer with Courtney's treatment, resulting in a bill of $363.65. During testimony at the contempt hearing, it was clearly established that Lorney paid the only bill he received from Dr. Ronald, and that, until Cynthia filed her motion on March 11, 2002, he was unaware that an additional bill from Dr. Ronald existed. Therefore, the District Court concluded that Cynthia's claim for ninety-two percent of Dr. Ronald's bill was barred by laches. We agree. Lorney was not given a chance to pay his percentage of Dr. Ronald's bill, nor submit the bill to his insurance provider, because he was not aware that such a bill existed. He suffered prejudice as a result of Cynthia's decision to wait six years to advise him that an additional bill from Dr. Ronald existed. Accordingly, Cynthia's claim

7

for ninety-two percent of Dr. Ronald's bill is barred by laches.

## ISSUE 2

¶22 Did the District Court err in requiring Lorney to pay ninety-two percent of Courtney's uncovered medical expenses?

¶23 In addition to his laches argument, Lorney makes two related arguments as to why he should not be responsible for Courtney's medical bills. First, he contends that he is not obligated to pay ninety-two percent of Dr. Windauer's bill because he did not consent to Courtney's orthodontic treatment. Second, he alleges that orthodontics are cosmetic in nature, and not a "medical related expense."

¶24 Lorney supports his position with our decision in *In re Marriage of Johnson*, 1999 MT 254, 296 Mont. 311, 989 P.2d 356. In *Johnson*, the District Court entered a Decree dissolving the marriage between Corliss Johnson and Melvin Johnson. The Decree required that Melvin pay fifty-eight percent of his daughter Hayley's uncovered medical, dental, orthodontic, optical, hospital, and other medical related expenses. *Johnson*, ¶¶ 5-6. Sometime thereafter, Hayley began to exhibit behavioral problems and Corliss enrolled her in the Anasazi Foundation, an outdoor wilderness treatment program for behavioral problems. Corliss asked Melvin to pay for fifty-eight percent of the program; however Melvin refused. *Johnson*, ¶ 7.

¶25 Corliss filed a motion, requesting that the District Court enforce the Dissolution Decree and require Melvin to pay for fifty-eight percent of the Anasazi program. The District Court found that the Anasazi program was not a "medical related expense," as

8

contemplated in the Dissolution Decree, and denied Corliss' motion. *Johnson*, ¶ 8. On appeal, we affirmed the District Court, concluding that substantial evidence existed to support the District Court's finding that the Anasazi program did not qualify as a "medical related expense." *Johnson*, ¶ 21.

¶26 Lorney asserts that, as in *Johnson*, Courtney's orthodontic treatment does not qualify as a "medical related expense," as contemplated in his Dissolution Decree. However, the two cases are distinguishable. In *Johnson*, the District Court based its finding that the Anasazi program was not a "medical related expense" on the following three factors: (1) it had no evidence that Hayley was sent to the program on a doctor's referral; (2) a doctor's referral was not required to send a child to the program; and (3) the program was not covered by Champus health insurance. In the instant case, while orthodontia was not covered by Lorney's insurance, three separate doctors recommended that Courtney undergo orthodontic treatment to address her dental problem. In fact, when questioned about the necessity of Courtney's orthodontic treatment, Dr. Windauer specifically testified that Courtney's treatment was *not* cosmetic. Thus, we conclude that, under the circumstances of this case, Courtney's orthodontic treatment was a "medical related expense."

¶27 Lorney further maintains that he is not obligated to pay for Courtney's orthodontic treatment, because he did not consent to such treatment. However, Lorney and Cynthia's Supplemental Order for Custody and Visitation states that Cynthia, as the parent with actual custody of the children, is required to provide the children with "appropriate medical examinations and treatments." Nothing in the Supplemental Order requires Cynthia to obtain

9

Lorney's consent before providing such appropriate examinations and treatments. The District Court determined that, under the circumstances of this case, the orthodontic treatment performed on Courtney was reasonable. We agree. Therefore, Lorney's consent was not a prerequisite to Courtney obtaining orthodontic treatment.

¶28 Lorney made similar arguments regarding Courtney's optical needs. The District Court properly disposed of these arguments as well.

### ISSUE 3

¶29 Did the District Court abuse its discretion when it awarded attorney's fees and costs to Cynthia?

¶30 The District Court conducted a hearing on Cynthia's motion for an order to show cause on May 15, 2002. At the conclusion of the hearing, the District Court stated that:

> I'm going to order [Lorney] to pay a portion of [Cynthia's] attorney fees. I don't know what the portion is yet. So leave a blank for the amount, and give me an affidavit . . . that lets me know how much [the fees] are, and I'll fill it in. I'll fill in the blank.

Cynthia's attorney submitted an affidavit to the District Court, regarding his attorney's fees, on May 29, 2002. Cynthia's attorney then served his affidavit on Lorney's attorney on July 30, 2002. The District Court issued its findings of fact and conclusions of law, ordering Lorney to reimburse Cynthia for a portion of her attorney's fees and costs, on September 4, 2002.

¶31 On appeal, Lorney maintains that the District Court abused its discretion when it ordered him to pay a portion of Cynthia's attorney's fees and costs. However, at the hearing

10

on May 15, 2002, Lorney made no objection to the District Court's statement that it intended to order him to pay a portion of Cynthia's attorney's fees. Nor did Lorney object to the affidavit of attorney's fees submitted by Cynthia's attorney. It is well stated that "we will not put a district court in error for a ruling or procedure in which the appellant acquiesced, participated, or to which the appellant made no objection." *In re Pedersen* (1993), 261 Mont. 284, 287, 862 P.2d 411, 413. Therefore, in this case, we will not put the District Court in error for awarding Cynthia a portion of her attorney's fees and costs.

**ISSUE 4**

¶32     Is Cynthia entitled to recover attorney's fees and costs on appeal?

¶33     Cynthia asserts that, pursuant to Rule 32, M.R.App.P., she should be entitled to recover the attorney's fees and costs she incurred responding to this appeal. Rule 32, M.R.App.P., provides that:

> If the supreme court is satisfied from the record and the presentation of the appeal in a civil case that the same was taken without substantial or reasonable grounds, such damages may be assessed on determination thereof as under the circumstances are deemed proper.

As a general rule, this Court will not impose sanctions under Rule 32, M.R.App.P., unless an appeal is entirely unfounded and intended to cause delay, or unless counsel's actions otherwise constitute an abuse of the judicial system. *Snow v. Snow*, 2002 MT 143, ¶ 31, 310 Mont. 260, ¶ 31, 49 P.3d 610, ¶ 31.

¶34     In the instant case, there is no evidence that Lorney's appeal was filed solely to cause delay or to otherwise abuse the judicial system. Moreover, we cannot conclude that

11

Lorney's appeal was "taken without substantial or reasonable grounds," as contemplated by Rule 32, M.R.App.P. As such, we decline to impose sanctions under Rule 32, M.R.App.P. Accordingly, Cynthia is not entitled to recover her attorney's fees and costs on appeal.

¶35 For the foregoing reasons, the judgment of the District Court is affirmed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE