No. 04-101

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 326

IN RE THE MARRIAGE OF

LILLIAN W. LeJEUNE FOSTER,

Petitioner and Appellant,

and

JOE FOSTER,

Respondent and Respondent.

APPEAL FROM:    The District Court of the Fifth Judicial District,
                In and For the County of Madison, Cause No. DV-29-2000-21,
                Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Edmund P. Sedivy, Sedivy, White & White, Bozeman, Montana

        For Respondent:

            Helene Orenstein, Attorney at Law, Bozeman, Montana

                                        Submitted on Briefs:  September 14, 2004

                                                Decided:  November 22, 2004

Filed:

        _____
                            Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Lillian W. LeJeune Foster appeals in this dissolution of marriage action from the District Court's distribution of property and from its imposition of a constructive trust on the home of her children Gregory and Sharon Muir. We reverse and remand for further proceedings.

¶2    The issues on appeal are:

¶3    1. Whether the District Court erred in awarding Joe Foster $47,400 as his share of marital property distribution.

¶4    2. Whether the District Court erred in imposing a constructive trust upon the home owned by non-parties Gregory and Sharon Muir as a lien for the payment by Lillian to Joe of the $47,400 judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

¶5    Lillian and Joe Foster married in 1979. At the time Lillian was 65 years of age and Joe was 48. After living in a mobile home of Joe's for two years, the couple moved into Lillian's family home in Pony, Montana, in 1981. Lillian had inherited the home a number of years prior to the marriage. Testimony in the trial below stated that the value of the Pony home in 1979 was between $45,000 and $50,000.

¶6    On September 26, 1988, without Joe's knowledge, Lillian transferred part of her fee simple in the Pony home to her children, Gregory Muir and Sharon Muir. She did this by creating two joint tenancies, one with Gregory and one with Sharon. Gregory and Sharon were Lillian's children from a prior marriage. Joe and Lillian had no children. Ten years

2

later, on January 22, 1998, Lillian transferred her remaining interest in the property to her children, leaving them as sole owners of the Pony home as tenants in common. However, Lillian retained a life estate in the property. Joe was also unaware of this transfer. The identity of the "owners" of the Pony home is not in dispute.

¶7 During their time at the Pony home, both parties lent a hand, at least to some degree, in maintaining the property. Lillian paid the property taxes in at least seventeen of the twenty years they lived there. Many of the home improvement payments were made out of her bank account. Joe performed yard-work and other odd jobs, such as patching the roof and sweeping the chimney, and installed a cabin on the property. Joe also provided the family's income for many years and tendered personal assistance to Lillian (although how much was disputed at trial) as her health worsened and she suffered multiple strokes. Having lived together at the Pony home since 1981, the parties separated in 2000, with Lillian filing a petition for dissolution in October of that year.

¶8 The District Court divided various items of personal property between the two, with an excess of $100 in value going to Joe. In addition, reasoning that the status of the two parties was "approximately equal," the court awarded half of the value of the Pony home to each spouse. The court found the home to be worth $95,000, and, after the $100 offset, that left Joe with a $47,400 interest in the home. It also stated that "Lillian's children would be unjustly enriched if they were allowed to take unfettered title to the home and real estate in Pony." Accordingly, it placed a constructive trust on the home.

**STANDARD OF REVIEW**

¶9 In reviewing a district court's division of marital property we evaluate whether the district court's findings of fact are clearly erroneous and whether the court correctly applied the law. *In re Marriage of Herrera*, 2004 MT 40, ¶ 18, 320 Mont. 71, ¶ 18, 85 P.3d 781, ¶ 18 (citing *In re Marriage of Foreman*, 1999 MT 89, ¶ 14, 294 Mont. 181, ¶ 14, 979 P.2d 193, ¶ 14). We will not conclude that a finding of fact is clearly erroneous unless it is not supported by substantial evidence, the district court misapprehended the gravity of the evidence, or if our examination of the record convinces us that the district court made a mistake. *Herrera*, ¶ 18 (citing *In re Marriage of Deist*, 2003 MT 263, ¶ 14, 317 Mont. 427, ¶ 14, 77 P.3d 525, ¶ 14). In the case of substantial credible evidence that supports the district court's findings and judgment, we will not alter the decision below unless the court abused its discretion. *Herrera*, ¶ 18 (citing *In re Marriage of Griffin* (1996), 275 Mont. 37, 43, 909 P.2d 707, 710-11).

**DISCUSSION**

**ISSUE ONE**

¶10 *Whether the District Court erred in awarding Joe $47,400 as his share of marital property distribution.*

¶11 Section 40-4-202, MCA, governs the distribution of the pre-acquired property of a marital estate. The relevant portion states:

> In dividing property acquired prior to the marriage . . . [and] the increased value of property acquired prior to marriage . . . the court shall consider those contributions of the other spouse to the marriage, including:
> (a) the nonmonetary contribution of a homemaker;
> (b) the extent to which such contributions have facilitated the maintenance of this property; and

4

(c) whether or not the property division serves as an alternative to maintenance arrangements.

Section 40-4-202(1), MCA. Subsection (c) is not at issue here. As regards the interpretation of this language,

> We have previously construed this provision to mean that regardless of who holds title, preacquired or gifted property need not be included in the marital estate unless the nonacquiring spouse contributed to its preservation or appreciation. In that event, we have held that the nonacquiring spouse is entitled to an equitable share of the appreciated or preserved value which is attributable to his or her efforts.

*In re Marriage of Engen*, 1998 MT 153, ¶ 29, 289 Mont. 299, ¶ 29, 961 P.2d 738, ¶ 29.

*Engen* and other precedents counsel us to beware of simply halving preacquired or gifted property between the spouses. In *Herrera* we concluded that "[b]ecause [the husband's] pre-acquired and gifted contributions were traceable, the District Court erred when it simply divided the equity in the marital residence equally, without regard to the parties' contributions." *Herrera*, ¶ 23.

¶12 In this case, Joe did contribute to the value of the Pony home. However, the District Court should have closely applied the criteria of § 40-4-202(1), MCA, to the case, instead of neatly drawing a line through the property's axis. Joe provided financial support to the couple's marriage, tended to home improvement needs, and cared for Lillian as her health deteriorated. Conversely, Lillian paid the property taxes and made numerous improvements to the property before she and Joe married. Since Joe's contributions were after the marriage, there is no reason to award Joe any of the value of the property as it was prior to the marriage. For the District Court to award half of the preacquired property to Joe was an abuse of discretion.

5

¶13 In contrast, Joe does have a claim "to an equitable share of the appreciated or preserved value" of the Pony home that is attributable to his efforts. *Herrera*, ¶ 21. In order to determine Joe's equitable share, there must be a factual determination of how much of the home's appreciation was due to Joe's efforts. Therefore, we remand this case to the District Court for an evaluation of this amount.

¶14 In evaluating the equitable share, the District Court should begin with the value of the home when the couple married. Then, in considering how much of the increase in value was due to Joe's efforts, it must consider that "'a non-acquiring spouse is not entitled to a share of the increase in premarital property when the property's appreciation is due simply to market factors.'" *Herrera*, ¶ 28 (quoting *In re Marriage of Steinbeisser*, 2002 MT 309, ¶ 47, 313 Mont. 74, ¶ 47, 60 P.3d 441, ¶ 47). Thus, it may not attribute the natural rise in property value to Joe, but only the rise that resulted from his actions.

¶15 Furthermore, there is the issue of how the District Court should incorporate Lillian's transfer of the Pony home to Gregory and Sharon Muir, and the resulting life estate. We hold that it should have no effect. Lillian owned the property in fee simple from the date of marriage until September 26, 1988. From September 26, 1988, to January 22, 1998, Lillian held a one-half undivided interest in two joint tenancies (one shared with Gregory, one shared with Sharon). After January 22, 1998, Lillian held a life estate in the Pony home. Lillian argues that Joe only has a claim for the appreciation of her share of the property, whether it be one half or a mere life estate, for the periods after the 1988 transfer. Given the secretive nature of the transfers, however, allowing them to affect Joe's claim would not

comport with principles of equity. Allowing undisclosed transfers such as this to affect the distribution of a marital estate leads to inequitable results. For example, a husband could surreptitiously transfer property held in his name to another party one year after marriage. The wife, unaware of the transfer, continues to contribute to the property for the next thirty years. However, upon a dissolution, the wife's claim against the property would be limited to the one-year period in which the husband owned the property. We do not wish to encourage such a result. We conclude that Joe also has a claim to the appreciation of the Pony home from September 26, 1988, up until dissolution.

¶16    Lillian asserts that she transferred the ownership of the property in order to keep it in her family. Lillian's children own the property, and that fact is not disputed. Our analysis does not affect the children's ownership rights. Instead, our holding is limited to Joe's equitable share of the marital estate. Just because Lillian no longer owns certain property in that estate does not mean that Joe does not have a claim for his good faith efforts in improving that property.

### ISSUE TWO

¶17    *Whether the District Court erred in imposing a constructive trust upon the Pony home owned by non-parties Gregory and Sharon Muir as a lien for the payment by Lillian to Joe of the $47,400 judgment.*

¶18    The District Court did not have jurisdiction over Lillian's children because Joe did not name them as parties. Generally, "a person who is not a party to an action, cannot be a

7

party to the judgment of that action." *Baltrusch v. Baltrusch*, 2003 MT 357, ¶ 62, 319 Mont. 23, ¶ 62, 83 P.3d 256, ¶ 62 (citing *Warnack v. Coneen Family Trust* (1994), 266 Mont. 203, 207, 879 P.2d 715, 718). Since Lillian's children are not parties to this action, the District Court had no jurisdiction to impose a constructive trust on their property.

¶19 Joe directs our attention to *Howard v. Dalio* (1991), 249 Mont. 316, 320, 815 P.2d 1150, 1152, in support of his argument that, cases such as *Baltrusch* and *Warnack* notwithstanding, the District Court had the authority to impose a constructive trust upon non-parties Gregory and Sharon Muir. However, *Howard* did not involve the imposition of a constructive trust on a non-party. In *Howard* we held that the district court should have imposed a constructive trust against a party in favor of the trust's *beneficiaries*. One of these beneficiaries was a non-party. *Howard*, 249 Mont. at 320, 815 P.2d at 1152. Gregory and Sharon Muir are not beneficiaries of a constructive trust. Instead they are non-party *trustees*. To emphasize this distinction we quote *Howard* itself, which stated, "Jurisdiction over the person upon whom the trust is imposed is pivotal, but all potential beneficiaries need not be parties." *Howard*, 249 Mont. at 319-20, 815 P.2d at 1152.

¶20 Joe also argues that Lillian filed her appeal too early because the District Court gave him time to add Gregory and Sharon Muir as parties. This argument does not have merit. The judgment allowed Joe "until January 31, 2004 [31 days after the judgment] in which to amend pleadings consistent with the evidence and this judgment." If Joe had added the Muirs as parties *after* the judgment, then, as parties to a lawsuit, the Muirs would have all the procedural rights attendant to litigation, such as service of process, Rule 4(d), M.R.Civ.P.,

right to file responsive pleadings, Rule 7(a), M.R.Civ.P., engage in discovery, Rule 26(b), M.R.Civ.P., and trial by jury, Art. II, Sec. 26, Mont. Const. In allowing Joe "to amend pleadings consistent with the evidence and this judgment," the District Court was not allowing him to add previously unnamed parties and subject them to a judgment without due process of law.

¶21 For the foregoing reasons the judgment of the District Court is reversed, and this case is remanded for further proceedings consistent with this opinion.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JIM RICE