No. 04-588

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 133

DANNY S. RICHARDS,

      Plaintiff and Appellant,

   v.

KARL KNUCHEL,

      Defendant and Respondent.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and for the County of Park, Cause No. DV-02-200,
The Honorable Randal I. Spaulding, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Alexander (Zander) Blewett, III, and Kurt M. Jackson, Hoyt & Blewett,
Great Falls, Montana

      For Respondent:

            Allan H. Baris, Moore, O'Connell & Refling, P.C., Bozeman, Montana

Submitted on Briefs: March 8, 2005

Decided:   May 31, 2005

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1      Appellant Danny S. Richards (Danny) appeals from an order entered by the Sixth Judicial District Court, Park County, dismissing his legal malpractice claim against Respondent Karl Knuchel (Karl) and ruling that his "lost appeal" would not have succeeded. We affirm.

¶2      Danny assigns as error the District Court's ruling that Karl did not commit legal malpractice when he failed to file a timely notice of appeal stemming from Danny's dissolution of his marriage. Danny also contends the District Court incorrectly determined that it, rather than the jury, should have decided the consequences of Karl's failure to timely file an appeal. Danny presents these issues separately, but the resolution of one follows naturally from that of the other.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3      The dissolution of Danny's marriage provides the underlying suit upon which he bases this malpractice action. Our decision in *In re the Marriage of Richards*, 2001 MT 183, 306 Mont. 212, 31 P.3d 1002, sets forth the details of the dissolution proceedings and subsequent appeals.

¶4      To summarize, Danny descended into his *Bleak House* reprising the role of John Jarndyce when he filed for divorce on October 3, 1997. Karl represented him through the process. The District Court held a trial and eventually adopted verbatim the proposed Findings of Fact, Conclusions of Law and Decree of Dissolution submitted by Danny's former wife. The presiding judge issued the decree on November 14, 2000, and immediately

recused himself. Danny's former wife served the Notice of Entry of Decree on November 17, 2000.

¶5 Danny timely filed a Motion to Reconsider on November 28, 2000, pursuant to Rule 52(d) and 59(d), M.R.Civ.P. A second judge assumed jurisdiction the next day and, after a series of hearings, eventually granted Danny's motion for a new trial on February 14, 2001, 76 days after Danny had filed his post-trial motion. Danny, believing he had won a valid order granting a new trial, failed to file a notice of appeal of the District Court's decree within the statutory 30-day time limit. *See* Rule 5(a)(4), M.R.App.P. Danny's former wife, however, appealed on the ground that the court's failure to rule on a motion for a new trial within 60 days had deprived it of jurisdiction to act. *See* Rule 52(d), M.R.Civ.P. We agreed that the District Court had erred when it granted Danny's motion for a new trial after the time to do so had expired. *Richards*, ¶ 12.

¶6 Danny filed a legal malpractice action against Karl after our decision in *Richards*. Danny asserted in his initial complaint that Karl negligently failed to file an appeal from the court's decree before the 30-day deadline had expired. Danny alleged that Karl's failure resulted in malpractice that caused the loss of his potentially successful appeal. Karl admitted in his answer that he negligently had allowed the deadline for filing a notice of appeal to expire, but denied that his failure to preserve Danny's right to appeal the dissolution decree caused any damages.

¶7 The first judge assigned to Danny's legal malpractice claim recused himself before discovery began and a second judge accepted jurisdiction. The second judge entered a

3

scheduling order indicating that Karl had admitted committing legal malpractice in failing to effect the proper post-trial relief and/or appeal from the dissolution decree and, therefore, the court's initial determination would be whether Danny's post-trial relief and/or appeal would have proven successful. The second judge also extended discovery and ordered that Karl be deposed.

¶8 Karl admitted again during the deposition that he had committed legal malpractice by allowing the 30-day deadline to expire on Danny's right to appeal the court's decree of dissolution, but he contested causing any damages. Danny's counsel also asked Karl whether he had committed malpractice by failing to heed the opportunity presented by local Rule 8, Montana Sixth Judicial District Court Rules, to notify the judge regarding matters under advisement for more than 30 days. Karl admitted that he had committed legal malpractice by failing to notify the court that the 60-day period to rule had run on Danny's Motion to Reconsider. Karl attempted to revise his deposition testimony a month and a half later pursuant to Rule 30(e), M.R.Civ.P., to reflect his belief that the district court's local rule failed to impose a mandatory duty to notify the judge regarding matters under advisement longer than 30 days and, therefore, no malpractice had occurred.

¶9 Danny amended his complaint in response to Karl's admissions at the deposition to include a legal malpractice claim for allowing the 60-day period to run without notifying the court of the impending deadline. Karl's answer to Danny's second amended complaint admitted that he negligently had allowed the 30-day deadline for filing a notice of appeal to expire, but denied responsibility for the court's failure to issue a ruling before the expiration

4

of the 60-day deadline. The second judge then recused himself from the case and a third judge assumed jurisdiction.

¶10 Danny next filed a brief contending that Karl's negligence prevented his successful post-trial motion and/or appeal. Danny also argued that the doctrine of judicial estoppel prevented Karl from denying the likely success of his appeal based upon Karl's repeated admission that he had committed legal malpractice in failing to prompt a response from the District Court within the 60-day time period or to file a notice of appeal within 30 days after the final judgment. In response, Karl filed a motion for partial summary judgment in which he argued that the local district court rule failed to impose a mandatory duty to notify the judge regarding matters under advisement for more than 30 days and that judicial estoppel did not prevent him from denying his liability or that the post-trial appeal would have been successful.

¶11 The District Court held a hearing on all pending motions and entered an order granting Karl's motion for partial summary judgment and denying Danny's motion. The District Court concluded that the local district court rule to contact the trial court regarding matters under advisement for more than 30 days did not impose a mandatory duty on Karl. The court further determined that judicial estoppel did not prevent Karl from taking a contrary legal position in a later legal malpractice claim after initially admitting liability. Finally, the court decided that Danny's lost appeal would have failed as a matter of law because the court's findings of fact and conclusions of law and decree of dissolution were not clearly erroneous. This appeal follows.

5

## STANDARD OF REVIEW

¶12 We review a district court's grant of summary judgment *de novo*, applying the same evaluation under Rule 56, M.R.Civ.P., as the district court. *Glacier Tennis Club at the Summit, LLC v. Treweek Constr. Co., Inc.,* 2004 MT 70, ¶ 21, 320 Mont. 351, ¶ 21, 87 P.3d 431, ¶ 21 (citations omitted). We review a district court's conclusions of law to determine whether they are correct. *Pablo v. Moore*, 2000 MT 48, ¶ 12, 298 Mont. 393, ¶ 12, 995 P.2d 460, ¶ 12.

## DISCUSSION

¶13 Danny argues that Karl admitted liability both in his answer to Danny's complaint and in his deposition and, therefore, the District Court erred in granting summary judgment on the question of whether Karl committed legal malpractice. Danny also argues that the District Court incorrectly determined that his "lost appeal" from the court's dissolution decree would have failed. Danny contends that determining a lost appeal's success presents a question for the jury and not a question of law for the court to decide and that the trial court's decree of dissolution remains clearly erroneous.

¶14 To prevail in a legal malpractice claim, a plaintiff must establish each of the following elements: (1) that the attorney owed him a duty of care; (2) that the attorney breached this duty by failing to use reasonable care and skill; (3) that the plaintiff has suffered damages; and (4) that the attorney's conduct proximately caused the damages. *Ereth v. Cascade County*, 2003 MT 328, ¶ 17, 318 Mont. 355, ¶ 17, 81 P.3d 463, ¶ 17. Failure to establish damages proves fatal to an attorney malpractice action. *Merzlak v. Purcell* (1992), 252

6

Mont. 527, 529, 830 P.2d 1278, 1279.

¶15  We assume, based on his own admissions, that Karl owed a duty of care and breached it.  Danny then must show that he suffered damages and that Karl's breach of duty proximately caused the damages.  The dissent instead seeks to frame this Court's argument in the context of our decisions in *Nehring v. LaCounte* (1986), 219 Mont. 462, 712 P.2d 1329, and *Massee v. Thompson*, 2004 MT 121, 321 Mont. 210, 90 P.3d 394, where we held that a statutory violation may be considered as evidence of negligence even if the violation does not constitute negligence *per se*.  The dissent maintains that by tacitly affirming the District Court's determination that Karl did not owe a duty to remind the court to timely rule on a pending motion we have held that no actionable breach of duty can arise from an attorney's failure to follow the local court rules.

¶16  Unlike statutes that restrict alcohol retailers from selling alcohol to minors and compel police officers to notify domestic abuse victims of their rights, which *Nehring* and *Massee* dealt with respectively, the local court rule here merely *encourages* lawyers to remind the court to timely rule on pending motions.  The local court rule's aspirational language proves discretionary and in direct contrast to the statutes at issue in *Nehring* and *Massee* which we determined created a mandatory duty.  *Nehring*, 219 Mont. at 470, 712 P.2d at 1335; *Massee*, ¶ 44.

¶17  The issue of damages thus remains whether Danny's appeal would have been successful if Karl had properly preserved it.  Put another way, if Danny's appeal would not have succeeded and this Court would have affirmed the trial judge's decision, Karl's

7

negligence could not have caused Danny any damages. Conversely, if Danny's appeal would have succeeded in reversing the trial court's judgment and ultimately obtained a more favorable result, then Danny indeed sustained damages stemming from Karl's negligence.

¶18 The question of proximate cause generally remains for the trier of fact in a legal malpractice action. *Stanley L. and Carolyn M. Watkins Trust v. Lacosta*, 2004 MT 144, ¶ 49, 321 Mont. 432, ¶ 49, 92 P.3d 620, ¶ 49. When an attorney's negligence occurs during the conduct of litigation, the trier of fact awards damages for a plaintiff's loss if it concludes that the attorney's negligence led to an unfavorable or less favorable outcome for the plaintiff. *Merzlak*, 252 Mont. at 529, 830 P.2d at 1279. The trier of fact in a legal malpractice case is called upon, in effect, to decide what the outcome for the plaintiff would have been in the earlier case if it had been tried properly, a process that we have described as a "suit within a suit." *Stott v. Fox* (1990), 246 Mont. 301, 305, 805 P.2d 1305, 1307 (citations omitted). Put another way, the second trier of fact will be asked to decide what a reasonable jury or fact finder would have determined, but for the attorney's negligence. In this case, however, determining whether Karl's failure to appeal caused Danny any damages requires determining whether that appeal would have been successful.

¶19 When the question in a malpractice case changes to whether an attorney failed to perfect an appeal the analysis shifts from one of fact–how a second jury placed in the shoes of the first would have ruled, but for the attorney's negligence–to one of law–how an appellate court would have ruled, but for the attorney's failure to perfect an appeal. Danny alleges that determining a lost appeal's success remains a question for the jury and not a

8

question of law for the court to decide. Danny contends, in the alternative, that the District Court improperly confined the scope of its review of his lost appeal claim to the trial transcript and record in the underlying action. In this regard, Danny argues that the second trial judge's untimely, but favorable ruling granting his motion to reconsider proves the likely "success" of his lost appeal.

¶20    We previously have not considered the question of whether the likely success of a lost appeal in a legal malpractice claim should be determined by the court or a jury. Courts in other jurisdictions have concluded that the proximate cause inquiry of whether the appellate court would have granted review and whether the client would have received a more favorable outcome must be made by the trial judge, and not a jury, as a matter of law. *See, e.g. Daugert v. Pappas* (Wash. 1985), 704 P.2d 600; *Thomas v. Bethea* (Md. 1998), 718 A.2d 1187. Similarly, in *Phillips v. Clancy* (Ariz. App. Div. 1 1986), 733 P.2d 300, 306, the court noted that "where issues of causation in a legal malpractice action hinge upon the possible outcome of an appeal, such issues are to be resolved by the trial judge as questions of law. *See also* R. Mallen & V. Levit, *Legal Malpractice* § 583, at 738 (2d ed., 1981) ("[t]he decision must be made by the trial judge as an issue of law").

¶21    In *Daugert*, the attorney-defendant failed to file a timely petition for appeal to the Washington Supreme Court of an adverse decision by the lower court. Having lost any right to a further appeal, the court entered judgment against the attorney's client. The client sued the attorney arguing that a trial court hearing a malpractice claim merely should retry the client's lost cause of action and that the jury should decide whether the client would have

9

fared better, but for such mishandling. The court held that the proximate cause inquiry involving an attorney's alleged failure to perfect an appeal remains, as a matter of law, whether an appellate court would have granted review and rendered a judgment more favorable to the client. These legal determinations should remain the exclusive province of the court, not the jury. *Daugert*, 704 P.2d at 604.

¶22    We similarly concluded in *Kinniburgh v. Garrity* (1990), 244 Mont. 350, 798 P.2d 102, that the plaintiff had no legal claim for relief where he suffered no damages as a result of the admitted negligence of his former counsel in missing the appeal date. Although *Kinniburgh* involved a malpractice claim premised, in part, on a lost appeal, the district court concluded that the claim to be advanced in plaintiff's lost appeal lacked merit. Therefore, the district court determined that the defendant's failure to prosecute the appeal had not been the proximate cause of any damages suffered by the plaintiff. We never reached the issue of whether the jury or the judge should evaluate the merits of a lost appeal. Nevertheless, we agreed that the district court, rather than a jury, properly evaluated the legal question of the validity of the claim that would have been presented through the lost appeal. *Kinniburgh*, 244 Mont. at 355, 798 P.2d at 105. Thus, the reasoning in *Daugert* proves persuasive and accords with our determination in *Kinniburgh* that the court should decide questions of law. We conclude that the probable outcome of a lost appeal presents a question of law for the trial court to decide based on the special expertise required to analyze the relevant law and any corresponding rules of appellate procedure.

¶23    We next must determine the appropriate scope of a district court's review of a lost

appeal. Once again, courts in other jurisdictions uniformly have limited their review to the transcript and record of the underlying action, counsel's arguments and subject to the same rule of review as would have been applied by the court on direct appeal. *Daugert*, 704 P.2d at 604; Mallen & Levit, *Legal Malpractice* § 583, at 738. We agree and similarly limit a district court's review of a lost appeal to the transcript and record of the underlying action and arguments presented by counsel.

¶24 Now we pause momentarily to explain the appropriate standard of review to be applied when presented with an appeal of a district court's denial of a lost appeal. The District Court reviewed the actions of the original trial court in the dissolution proceeding, including its findings of fact and conclusions of law. The District Court properly granted Karl's motion for summary judgment having deferred to the original trial court's findings in the dissolution proceeding absent an abuse of discretion, *In re Marriage of Foster*, 2004 MT 326, ¶ 9, 324 Mont. 114, ¶ 9, 102 P.3d 16, ¶ 9, and having reviewed the original trial court's conclusions of law for correctness. *Pablo*, ¶ 12.

¶ 25 We, in turn, pursuant to our usual practice review *de novo* the District Court's grant of summary judgment. *Glacier Tennis Club*, ¶ 21. The record before a district court in a summary judgment proceeding normally includes undisputed facts to which the district court applies the law. *Cole v. Valley Ice Garden*, 2005 MT 115, ¶ 4, 325 Mont. 388, ¶ 4, 113 P.3d 275, ¶ 4. A district court makes no factual findings and resolves no factual disputes at the summary judgment stage. *Cole*, ¶ 4. In a case such as this where Richards appeals the District Court's denial of his lost appeal, however, the record before the District Court

included findings of fact entered by the original trial court after a full trial in the dissolution proceeding. The District Court deferred to these factual findings and we too must defer to the original trial court's findings of fact in the dissolution proceeding–the only fact-finding conducted throughout this entire action–absent an abuse of discretion. *Foster*, ¶ 9. Thus, we apply the same rule of review that would have been applied by this Court on direct appeal of the original trial court's findings. *Daugert*, 704 P.2d at 604. And no abuse of discretion can be found under such circumstances where substantial credible evidence supports the original trial court's findings in the dissolution proceeding. *Foster*, ¶ 9.

¶26 The District Court first addressed the issue of whether the trial court erred in adopting verbatim Danny's former wife's proposed findings of fact, conclusions of law and decree of dissolution. The District Court recognized that we will not overturn a trial court's wholesale adoption of proposed findings of fact and conclusions of law unless they prove clearly erroneous. *Norwood v. Service Distributing, Inc.*, 2000 MT 4, ¶ 39, 297 Mont. 473, ¶ 39, 994 P.2d 25, ¶ 39. Courts may adopt any such proposed findings or conclusions so long as the evidence and the law of the case supports them. *Norwood*, ¶ 39. Danny simply objects to the dissolution findings without providing specific reasons. The District Court found and we agree, however, that substantial credible evidence supported the trial court's findings and thus no abuse of discretion occurred.

¶27 The District Court next reviewed whether the trial court's findings of fact with respect to the parenting plan were clearly erroneous. Danny contends that the trial court ignored the stipulation recommended by the custodial evaluator and agreed to by the parties regarding

their children's parenting and instead adopted verbatim the recommendations of his former wife. The District Court recognized that stipulations and agreements between the parties concerning custody, support and visitation were not binding on the trial court. *In re Marriage of Simms* (1994), 264 Mont. 317, 325-26, 871 P.2d 899, 904. Further, the District Court determined that the trial court did not act arbitrarily, without the employment of conscientious judgment or exceed the bounds of reason, by rejecting the expert's recommended parenting arrangement. The District Court reasoned that the parenting plan set forth by the trial court properly considered the best interests of the children, including Danny's former wife's schedule, availability and dedication. As such, the District Court concluded, and we agree, that substantial credible evidence supported the trial court's findings regarding its determination of primary parenting time and therefore the trial court did not abuse its discretion.

¶28 The District Court also addressed whether the trial court clearly erred in valuing the marital property. Danny contends that the trial court erroneously adopted the testimony of his former wife's expert who added together two distinct business valuation methods to arrive at an inflated value of Danny's business. The District Court noted that the trial court enjoys wide discretion in equitably apportioning the marital estate. *In re Marriage of Dowd* (1993), 261 Mont. 319, 323, 862 P.2d 1123, 1125. The District Court also noted that the trial court remains free to adopt any reasonable valuation of marital property supported by the record as long as it proves reasonable in light of the evidence submitted. *In re Marriage of Meeks* (1996), 276 Mont. 237, 242-43, 915 P.2d 831, 834-35. The District Court

concluded that the trial court properly considered the valuation technique of Danny's former wife's expert because it fully valued the business' annual income and liabilities as reflected on the corporate and individual tax returns. Further, the trial court noted inconsistencies in the testimony of Danny's expert regarding the valuation of the business. Once again, the District Court concluded and we agree that substantial evidence in the record supported the trial court's findings regarding the valuation of the marital estate.

¶29     Finally, the District Court considered whether the trial court erred with respect to its determination regarding child support. Danny contends that the court imputed to him substantial income for the purposes of child maintenance that did not exist. The District Court noted that the trial court considered all relevant factors enumerated under § 40-4-204, MCA, in determining child support, including the financial resources of the parents, the children's standard of living, the physical and emotional condition of the children, and the parental rights. To those ends, the trial court relied on the testimony of both experts and valued the total income for each parent and calculated the child support using the Montana Child Support Guidelines. Accordingly, the District Court determined and we agree that sufficient credible evidence supported the trial court's findings regarding Danny's child support payments and the trial court did not abuse its discretion.

¶30     Thus, we conclude that substantial credible evidence in the record supports the District Court's determinations that Danny's lost appeal would not have resulted in a successful or favorable outcome. Danny failed to establish that Karl's breach caused any damages based on his inability to demonstrate that he would have prevailed on his lost appeal

and therefore Danny's malpractice claim falters. *Merzlak*, 252 Mont. at 529, 830 P.2d at 1279. We affirm the District Court's determinations as to Danny's lost appeal and end Danny's seven and a half year descent into the *Bleak House*.

¶31 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

Justice Patricia O. Cotter dissents.

¶32 I dissent. In granting summary judgment, the District Court made an erroneous conclusion of law which we have perpetuated. This conclusion is noted--but not further analyzed--in ¶ 11 of our Opinion, where we state: "The District Court concluded that the local district court rule to contact the trial court regarding matters under advisement for more than 30 days did not impose a mandatory duty on Karl." In fact, the District Court went on to conclude that no duty at all arose from the rule. We in turn affirm the District Court. I submit that this conclusion is incorrect, and that its correct resolution would change our decision.

¶33 At the outset, it is important to note that there were two separate and distinct failures on the part of Karl that were alleged by Danny. The first was Karl's failure to invoke the local rule and remind the judge to rule on his Rule 52 and 59 post-trial motions. Had Karl

15

provided the reminder and a timely order for new trial been granted, then the ensuing appeal would have been the responsibility of Danny's former wife, and not Danny. The second alleged error was Karl's failure to file a notice of appeal once the court failed to timely rule. The onus of appeal in this instance would have been on Danny and not his former wife. Thus, the consequences stemming from the two alleged failures are radically different. It is with these dissimilar consequences in mind that I analyze our decision to affirm the District Court's order of summary judgment for Karl on his failure to invoke the local rule.

¶34 By affirming the District Court's summary judgment order on Karl's failure to follow the local rule and remind the court to timely rule on the Rule 52 and 59 motions, we have in effect said that no actionable breach of duty can arise from an attorney's failure to follow the local court rules; in essence, as long as the rule is not mandatory, an attorney cannot be negligent for failing to follow it. I disagree, for two reasons. First, we ignore our long-standing rule that, even if the violation of a statute does not constitute negligence *per se*, such violation may nevertheless be considered as evidence of negligence. *Nehring v. LaCounte* (1986), 219 Mont. 462, 468, 712 P.2d 1329, 1333. Recently, in *Massee v. Thompson*, 2004 MT 121, ¶ 60, 321 Mont. 210, ¶ 60, 90 P.3d 394, ¶ 60, we held that the district court erred in concluding that, because a statute imposed no mandatory duty on the defendant, its violation could not support a verdict of negligence. We said that a violation of a statute could be evidence of negligence, even if such violation is not necessarily negligence *per se*. *Massee,* ¶¶ 33, 60. The same is true here. Karl's admitted violation of a court rule of which he had knowledge--whether that rule is mandatory or not--is clearly evidence of negligence.

16

¶35 Second, the obligation to ensure timely disposition of a Rule 59 motion is well-known to every competent practitioner. We have repeatedly warned lawyers over the years of the dangers of failing to comply with the mandatory requirements of Rule 59. In *Wallinder v. Lagerquist* (1982), 201 Mont. 212, 219, 653 P.2d 840, 843, we even captioned the cautionary paragraph of our Opinion with this opening word: *Warning*. In *Johnson v. Eagles Lodge Aerie 3913* (1997), 284 Mont. 474, 480, 945 P.2d 62, 65, we "renew[ed] our warning that counsel must carefully follow Rules 59 and 60 . . . ." Karl had notice of this well-known obligation to prompt the court and admitted at one point that his failure to do so was in fact malpractice. *See above,* ¶ 8. I therefore disagree with this Court's unspoken but apparent conclusion that the District Court was correct when it held that because the local rule was not mandatory, Karl cannot have been negligent for failing to follow it. Under these circumstances, I would conclude the opposite: Karl was negligent.

¶36 Moreover, Karl's negligence was the cause of Danny's "*Bleak House,*" as the Court calls it. *See above,* ¶ 4. Judge Cybulski, who eventually--though untimely--granted Danny's motion for new trial, filed an affidavit indicating that had he been reminded of the 60-day time limitation, he would have completed his order granting a new trial in timely fashion. Thus, had Karl invoked the local rule, the order granting Danny's motion for a new trial would have been entered in accordance with the requirements of Rules 52 and 59, M.R.Civ.P.

¶37 Returning now to my opening comment, the significance of a timely order for new trial, had one been entered, cannot be overstated. If any appeal would be taken from that

order, it would have been incumbent on Danny's former wife, and not Danny, to file it. Moreover, because we review a district court's order granting a new trial for manifest abuse of discretion, *Schuff v. Jackson*, 2002 MT 215, ¶ 14, 311 Mont. 312, ¶ 14, 55 P.3d 387, ¶ 14, it is highly likely we would have deferred to the District Court's findings of fact and order for new trial favoring Danny.

¶38 This Court states at ¶ 15 of its Opinion, "if Danny's appeal would have succeeded in reversing the trial court's judgment and ultimately obtained a more favorable result, then Danny indeed sustained damages stemming from Karl's negligence." I agree with this statement--had Karl been diligent, and a timely order for new trial been entered, Danny's former wife would have borne the burden on appeal and Danny likely would have prevailed. Thus, he indeed sustained damages stemming from Karl's negligence.

¶39 I would conclude that Karl was negligent in failing to timely remind the court to rule on his post-trial motions. This being so, I would conclude that *but for Karl's negligence,* Danny would have been granted his new trial, and any appeal from that order would have likely been favorable to him. Because I would analyze this case from the standpoint of Danny as the prevailing party on the motion for new trial, I disagree with the Court's decision to review for an abuse of discretion the District Court's original findings of fact and conclusions of law that were *adverse* to Danny.

¶40 In sum, I would conclude that Karl was negligent, and that his negligence caused Danny's damages. I would therefore reverse and remand for trial on the issue of Danny's damages. I dissent from our refusal to do so.

/S/ PATRICIA O. COTTER