DA 11-0755

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 312

HOLLY LABAIR and ROBERT LABAIR,
Individually and on behalf of DAWSON R.
LABAIR, deceased minor child,

      Plaintiffs and Appellants,

   v.

STEVE CAREY, Esq., and CAREY LAW
FIRM, and JANE DOES 1-4,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DV-10-254
                Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Tina L. Morin (argued), Morin Law Firm, PLLC, Butte, Montana

        For Appellees:

                Mikel L. Moore (argued), Moore, Cockrell, Goicoechea & Axelberg, P.C.,
                Kalispell, Montana

                        Oral Argument:  October 22, 2012
                              Submitted:  October 23, 2012
                                 Decided:  December 27, 2012

Filed:

          _____
                         Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      Holly and Robert Labair (the Labairs) appeal from an order and judgment of the Montana Fourth Judicial District Court, Missoula County, granting summary judgment to Steve Carey and Carey Law Firm (collectively "Carey") and dismissing the Labairs' claims of legal malpractice.  We reverse and remand.

## ISSUES

¶2      The Labairs raised the following issue on appeal:  whether a plaintiff alleging legal malpractice based on a missed statute of limitations in a medical malpractice case must present expert legal testimony establishing the likelihood of success of the underlying medical malpractice claims in order to establish a prima facie case and avoid summary judgment.

¶3      In advance of oral argument, the parties were asked to be prepared to discuss two additional issues:  (1) whether this Court's extant legal malpractice jurisprudence is consistent with the clarifications to the causation analysis adopted in *Busta v. Columbus Hosp.*, 276 Mont. 342, 916 P.2d 122 (1996); and (2) whether proof of the "suit within a suit" is an appropriate burden to be placed on the plaintiff in a legal malpractice action.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4      On October 3, 2003, the Labairs lost their newborn baby, Dawson Labair, after an early delivery by C-section on October 2, 2003.  In January 2004, the Labairs spoke with Carey about a potential medical malpractice lawsuit against their Missoula obstetrician, Dr. Thomas Baumgartner.  On January 27, 2004, they signed a retainer agreement with

Carey. The retainer agreement provided that Carey would pursue their potential medical malpractice claim. Carey associated Helena attorney Curt Drake (Drake) as co-counsel to assist in obtaining medical records.

¶5 After agreeing to represent the Labairs, Carey and Drake collected medical records and consulted with experts in an effort to secure the necessary evidence and testimony to prove the medical malpractice claims. Carey hired Dr. Robert Carpenter to review the medical records and provide his expert opinion. Dr. Carpenter opined in his report that Dr. Baumgartner's actions "fell below the standard of care for a prudent practitioner of obstetrics in 2003." Dr. Carpenter further stated that "deficits in care proximately caused the ultimate outcome in this baby."

¶6 In April 2005, Carey and the Labairs met with treating specialist Dr. Lynn Montgomery. Dr. Montgomery indicated that he believed Dr. Baumgartner had committed malpractice, but he was unwilling to testify as an expert witness in the case because he practiced in the same community as Dr. Baumgartner. Carey also consulted with Dr. Marc Collin, Dr. Robert Roth, and Dr. David Neal Jackson. According to Carey, these three potential medical expert witnesses could not provide favorable opinions.

¶7 On September 14, 2006, Carey filed a complaint against Dr. Baumgartner and Community Medical Center, Inc. alleging negligence and negligent infliction of emotional distress. The complaint alleged that Dr. Baumgartner breached his duty of care to the Labairs by failing to perform an ultrasound for fetal evaluation in September

3

2003. The complaint further alleged that Dr. Baumgartner's actions directly and proximately caused damages to the Labairs and their newborn son.

¶8 Carey failed to file an application with the Montana Medical Legal Panel (MMLP) before filing a complaint with the District Court, as required under §§ 27-6-301 and -701, MCA. Further, he failed to file an MMLP application within the three-year statute of limitations applicable to medical malpractice claims. Section 27-2-205, MCA. Carey later admitted that an error was made when calculating the applicable statute of limitations. Unaware that Carey had missed the statute of limitations, the Labairs sent a letter to Carey on April 18, 2007, more than six months after the three-year statute of limitations had expired. In this letter, the Labairs stated that they believed Carey did not intend to pursue their claims so they were going to take their case elsewhere. When the District Court later dismissed the Labairs' medical malpractice case without prejudice on November 16, 2007, Carey was still the attorney of record. On May 19, 2008, the District Court dismissed with prejudice the Labairs' medical malpractice claims as time-barred by the statute of limitations.

¶9 On March 3, 2010, the Labairs filed a complaint for legal malpractice against Carey and Drake alleging negligence, negligence per se, negligent and intentional infliction of emotional distress, breach of contract, punitive damages, tortious breach of statutory duty, fraud, constructive fraud, and breach of fiduciary duties. The Labairs' new counsel also filed an untimely MMLP application in an attempt to build evidence of the viability of the underlying medical malpractice claims. The MMLP heard the claims

4

and issued a decision. The District Court did not rule on the Labairs' motion to allow evidence of the MMLP's findings to be introduced at trial.

¶10 On July 29, 2011, the Labairs filed a motion for partial summary judgment on the issue of Carey and Drake's liability for legal malpractice. The Labairs contended that they were entitled to judgment as a matter of law because Carey admitted to missing the statute of limitations. The Labairs offered the opinion of their legal expert, Michael Alterowitz, who opined that missing the statute of limitations caused damages to the Labairs by causing the loss of their medical malpractice claims. Carey responded by arguing that the Labairs' claims must fail for lack of necessary expert testimony on causation and damages, both in the underlying medical malpractice case and the current legal malpractice action.

¶11 On August 19, 2011, Carey filed a motion for summary judgment. Carey admitted in his brief that his failure to file the MMLP application before the statute of limitations had run constituted a breach of the standard of care. However, he argued that his breach did not cause any injuries or damages to the Labairs. To support this view, Carey offered the affidavit of Douglas Buxbaum, an attorney with experience in handling professional and medical negligence cases. Mr. Buxbaum opined that Carey's failure to file the case properly prior to the expiration of the statute of limitations did not prejudice the Labairs because the underlying medical malpractice claims could not be established. Specifically, Buxbaum asserted that Carey was unable to develop the necessary expert testimony to prove the underlying medical malpractice claims.

¶12 The Labairs reached a settlement agreement with Drake on September 2, 2011. The District Court approved the settlement agreement on September 12, 2011, and filed it under seal. All of the Labairs' claims against Drake were dismissed with prejudice.

¶13 On October 3, 2011, the District Court held a hearing on the pending motions for summary judgment and each side was afforded the opportunity to argue their position. On November 21, 2011, the District Court entered its order denying the Labairs' motion for partial summary judgment and granting summary judgment in favor of Carey. The District Court concluded that the Labairs failed to establish a prima facie case of legal malpractice because they failed to provide admissible expert evidence on medical causation and damages. The District Court also determined that Carey sufficiently established through the affidavit of Buxbaum that the underlying medical malpractice case would have failed because Carey was unable to develop the testimony required to succeed on the claim. The District Court agreed with Carey that his conduct of failing to file the application with the MMLP did not cause the Labairs any injury or damages because the Labairs failed to carry their burden of showing that the underlying medical malpractice claims would have succeeded but for the error. Finding no genuine issues of material fact, the District Court entered summary judgment for Carey.

¶14 On November 30, 2011, the District Court entered its final judgment dismissing the Labairs' complaint with prejudice. The Labairs appeal the District Court's entry of summary judgment in favor of Carey and the subsequent dismissal of their legal malpractice claims. The appeal was heard on oral argument before this Court on October 22, 2012.

## STANDARD OF REVIEW

¶15 We review a district court's ruling on a motion for summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as did the district court. *Estate of Willson v. Addison*, 2011 MT 179, ¶ 11, 361 Mont. 269, 258 P.3d 410. Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3).

## DISCUSSION

¶16 *Did the District Court err in granting Carey's motion for summary judgment?*

¶17 The Labairs assert claims of legal malpractice against Carey. Attorney malpractice is a type of professional negligence. *Merzlak v. Purcell*, 252 Mont. 527, 529, 830 P.2d 1278, 1279 (1992). To recover in a professional negligence action, "the plaintiff must prove that the professional owed him a duty, and that the professional failed to live up to that duty, thus causing damages to the plaintiff." *Merzlak*, 252 Mont. at 529, 830 P.2d at 1279; *Lorash v. Epstein*, 236 Mont. 21, 24, 767 P.2d 1335, 1337 (1989) (quoting *Carlson v. Morton*, 229 Mont. 234, 238, 745 P.2d 1133, 1136 (1987)). Though stated in a slightly different way, these elements coincide with the four requisite elements of a common negligence action: (1) duty; (2) breach; (3) causation; and (4) damages. *See Dubiel v. Mont. DOT*, 2012 MT 35, ¶ 12, 364 Mont. 175, 272 P.3d 66.

¶18 Only two of the four elements of a legal malpractice claim are at issue in this appeal. Carey has admitted to owing a duty of care to the Labairs. As Carey signed a retainer agreement with the Labairs and agreed to pursue their medical malpractice

7

claims, an attorney-client relationship clearly existed between the parties. Carey further admits to breaching the standard of care by failing to file an application for review with the MMLP before the expiration of the applicable statute of limitations. Section 27-6-701, MCA, provides that "[n]o malpractice claim may be filed in any court against a health care provider before an application is made to the panel and its decision is rendered." Pursuant to § 27-2-205, MCA, medical malpractice actions must be commenced within three years after the date of injury.[1] It is undisputed that Carey failed to file an application before the MMLP within three years of Dawson's death, and that this failure in turn subjected the medical malpractice case to dismissal.

¶19 The parties contest, however, whether Carey's breach of the standard of care was the cause of any injuries or damages to the Labairs.

## A. Causation Analysis in Legal Malpractice Actions

¶20 In recent years, we have consistently set forth the elements of a legal malpractice claim as follows: (1) the attorney owed the plaintiff a duty of care; (2) the attorney breached this duty by failure to use reasonable care and skill; (3) the plaintiff suffered an injury; and (4) the attorney's conduct was the proximate cause of the injury. *See e.g.* *Spencer v. Beck*, 2010 MT 256, ¶ 13, 358 Mont. 295, 245 P.3d 21; *Richards v. Knuchel*, 2005 MT 133, ¶ 14, 327 Mont. 249, 115 P.3d 189; *Ereth v. Cascade County*, 2003 MT 328, ¶ 17, 318 Mont. 355, 81 P.3d 463; *Hauschulz v. Michael Law Firm*, 2001 MT 160, ¶ 11, 306 Mont. 102, 30 P.3d 357. In addition to reciting "proximate cause" as an

---

[1] When a medical malpractice claim is timely filed before the MMLP, the running of the statute of limitations for the underlying negligence claim is tolled until the Panel issues a decision, and for a short time thereafter, pursuant to § 27-6-702, MCA.

essential element of a legal malpractice claim, some of our decisions have gone on to apply a two-tiered approach to the causation analysis that also includes the "but for" test. *See e.g. Lorash*, 236 Mont. at 24, 767 P.2d at 1337 ("The final requirement for the plaintiff is the need to establish that 'but for' such negligence or breach of contract the client would have been successful in the prosecution or defense of the action.") (internal quotations omitted).

¶21 We take this opportunity to clarify our previous legal malpractice jurisprudence and reconcile the causation analysis with this Court's decision in *Busta v. Columbus Hosp.*, 276 Mont. 342, 916 P.2d 122 (1996). The *Busta* decision jettisoned the two-tiered approach to causation in 1996. In *Busta*, we held that in "cases which do not involve issues of intervening cause, proof of causation is satisfied by proof that a party's conduct was a cause-in-fact of the damage alleged." *Busta*, 276 Mont. at 371, 916 P.2d at 139. Conduct of a party is a cause-in-fact of an event if the event in question would not have occurred but for that conduct. *Busta*, 276 Mont. at 371, 916 P.2d at 139. We further held that proximate cause is not an element of negligence analysis except in cases involving an allegation of an independent intervening cause or multiple causes. *Busta*, 276 Mont. at 371, 916 P.2d at 139.

¶22 The proper framework for analyzing causation in light of our decision in *Busta* was further clarified in *Fisher v. Swift Transp. Co.*, 2008 MT 105, ¶¶ 36-39, 342 Mont. 335, 181 P.3d 601. In *Fisher*, we explained that "[a] defendant's negligence is the direct cause of the plaintiff's injury if there is an uninterrupted chain of events from the negligent act to the plaintiff's injury." *Fisher*, ¶ 36. In such cases, proof of causation is

9

analyzed by applying the "but for" test to determine if a party's conduct was the cause-in-fact of the damage alleged. *Fisher*, ¶ 36. However, the analysis becomes complicated when the case involves an intervening cause. *Fisher*, ¶ 38. "An intervening cause is a force that comes into motion after the defendant's negligent act, and combines with the negligent act to cause injury to the plaintiff." *Fisher*, ¶ 38. When the defendant alleges that the chain of causation has been severed by an independent, intervening cause, we must undertake a two-tiered analysis: (1) we consider whether the defendant's negligent act was a cause-in-fact of the plaintiff's injury; and (2) we consider whether the defendant's act was a proximate cause of the plaintiff's injury. *Fisher*, ¶ 39. The plaintiff must establish proximate cause by showing that it was the "defendant's breach which 'foreseeably and substantially' caused his injury." *Fisher*, ¶ 39 (quoting *Eklund v. Trost*, 2006 MT 333, ¶ 45, 335 Mont. 112, 151 P.3d 870).

¶23 Regrettably, the vast majority of our post-*Busta* cases have failed to reconcile the elements of attorney negligence with the *Busta* causation framework. As a result, "proximate cause" has been wrongly perpetuated as an essential element of a legal malpractice claim in case after case. *See e.g. Spencer*, ¶ 13; *Richards*, ¶ 14; *Ereth*, ¶ 17; *Hauschulz*, ¶ 11. In fact, it appears that only a single legal malpractice decision acknowledges *Busta*. *See Babcock Place P'ship v. Berg, Lilly, Andriolo & Tollefson, P.C.*, 2003 MT 111, ¶ 20, 315 Mont. 364, 69 P.3d 1145. Our other legal malpractice cases since 1996 have all included proximate cause as an essential element.[2]

---

[2] We also note that our medical malpractice jurisprudence has similarly failed to embrace the causation analysis set forth in *Busta*. *See e.g. Estate of Willson*, ¶ 17 ("It is well settled Montana

10

¶24 Pursuant to *Busta*, *Babcock Place*, and *Fisher*, an attorney's negligence is the cause of the plaintiff's injury if there is an uninterrupted chain of events from the negligent act to the injury. In such cases, proof of causation is satisfied by proof that the attorney's negligent conduct was a cause-in-fact of the damage alleged, i.e., that the injury would not have occurred "but for" that conduct. Only when the attorney alleges that the chain of causation has been severed by an independent intervening cause should there be any discussion or consideration of whether the attorney's negligent act was the "proximate cause" of the plaintiff's injury, i.e., whether the attorney's breach "foreseeably and substantially" caused the injury.

## B. Causation in the Labairs' Legal Malpractice Action Against Carey

¶25 In the present case, there is no issue of proximate cause. There is no allegation that some other force combined with Carey's negligence to cause the Labairs' injury.[3] In the absence of an intervening cause, our inquiry is simply whether Carey's negligent conduct was a cause-in-fact of the damage alleged by the Labairs—that is, whether the Labairs' injury would not have occurred "but for" Carey's admittedly negligent conduct.

¶26 The District Court determined that although Carey's conduct fell below the standard of care, it did not make a difference in the outcome of the underlying action because the medical malpractice case would not have had a successful outcome. The District Court relied on the "suit within a suit" approach in reaching this conclusion. The

---

law that the plaintiff in a medical malpractice action must establish the following elements: (1) the applicable standard of care, (2) the defendant departed from that standard of care, and (3) the departure proximately caused plaintiff's injury.").
[3] We explain what constitutes the "injury" in ¶¶ 31-34 of this Opinion.

11

process of a "suit within a suit" calls upon the trier of fact in a legal malpractice case to decide what the outcome for the plaintiff would have been in the underlying case if it had been tried properly. *Stott v. Fox*, 246 Mont. 301, 305, 805 P.2d 1305, 1307 (1990). The trier of fact in the legal malpractice case will be asked to decide what a reasonable jury or fact finder would have determined in the underlying case, "but for" the attorney's negligence. *Richards*, ¶ 18.

¶27    The District Court concluded that the Labairs' underlying medical malpractice case would not have been successful by relying on the testimony of Carey's legal expert, Buxbaum. We conclude this was error. We further conclude that the District Court erred in the following ways in entering summary judgment in favor of Carey: (1) it relied on improper expert testimony; (2) it failed to consider the Labairs' medical expert's testimony on the merits of the underlying case; (3) it defined the Labairs' injury too narrowly; (4) it erred in concluding that Carey was not the cause-in-fact of the Labairs' injury; and (5) it imposed a burden on the Labairs of having to prove the success of their medical malpractice action at the summary judgment stage. We address each error in turn.

**1. A legal expert cannot opine on the merits of a medical malpractice case.**

¶28    First, the District Court incorrectly considered Buxbaum's *legal* opinion in determining whether the underlying *medical* malpractice claims would have been successful. Buxbaum opined that Carey was unable to develop the necessary expert testimony to prove the Labairs' medical malpractice claims. An attorney is not qualified to express an expert medical opinion. *See Maulding v. Hardman*, 257 Mont. 18, 27, 847

12

P.2d 292, 298 (1993) (holding that an attorney is unqualified to offer an expert medical opinion regarding a party's condition or prognosis to establish damage amounts); *Busta*, 276 Mont. at 356, 916 P.2d at 130 (holding that an attorney could not express an opinion regarding the medical explanation for a patient's departure from a hospital window). While we acknowledge Buxbaum's legal expertise in medical malpractice cases, the fact remains that he is an attorney and not a medical doctor. His experience and knowledge may qualify him to offer his legal opinion regarding the standard of care for a legal professional and to discuss whether Carey's actions conformed to that standard, but it does not qualify him to offer expert medical opinions on the merits of a medical malpractice case.

## 2. The Labairs presented sufficient expert testimony to avoid summary judgment.

¶29    Second, the District Court characterized Buxbaum's testimony that the underlying medical malpractice claims would not be successful as "uncontroverted." A plaintiff in a medical malpractice action in Montana must establish the following elements: (1) the applicable standard of care; (2) the defendant departed from that standard of care; and (3) the departure caused plaintiff's injury.[4] *Estate of Willson*, ¶ 17; *Montana Deaconess Hosp. v. Gratton*, 169 Mont. 185, 189, 545 P.2d 670, 672 (1976). Without expert testimony to establish these elements, no genuine issue of material fact exists and the defendant is entitled to judgment as a matter of law. *Estate of Willson*, ¶ 17. The Labairs provided the District Court with expert medical opinions from Dr. Carpenter and Dr.

---

[4] We have chosen to exclude the word "proximate" from the third element of a medical malpractice action to reconcile our professional negligence causation analysis with our decision in *Busta*, as previously discussed in this Opinion.

13

Montgomery. Both doctors opined that Dr. Baumgartner departed from the standard of care and that his departure likely resulted in injury to Dawson Labair. Carey argues that Dr. Montgomery was unwilling to testify at trial because he practiced in the same community as Dr. Baumgartner; however, Dr. Carpenter's opinion alone was sufficient to withstand summary judgment. *Weimar v. Lyons*, 2007 MT 182, ¶ 29, 338 Mont. 242, 164 P.3d 922 ("It is well-established that the testimony of one witness is sufficient to prove any fact."); *see also Griffin v. Moseley*, 2010 MT 132, ¶¶ 32-34, 356 Mont. 393, 234 P.3d 869 (holding that the expert medical opinion of one doctor was sufficient to raise a genuine issue of material fact and avoid summary judgment). Thus, the District Court was mistaken when it characterized as "uncontroverted" Buxbaum's affidavit to the effect that Labairs' underlying claims could not have been successful.

¶30 The Labairs also presented sufficient legal expert testimony. The Labairs' legal expert, Alterowitz, prepared a report addressing the standard of care and breach issues with respect to a claim of legal malpractice. Alterowitz offered the following opinion:

> Carey's failures to file the matter before the MMLP prior to filing in District Court in a timely fashion are below the standard of care of attorneys practicing in Montana and caused Labairs to lose their claim for damages. His failure to inform Labairs that his investigation was incomplete in sufficient time to allow them to secure another opinion falls below the standard or care of attorneys practicing in Montana.

The District Court determined that the Labairs failed to provide admissible expert evidence on causation and damages because Alterowitz was not an expert in handling medical malpractice cases. In reaching this decision, the District Court conflated the requirement of providing expert legal testimony to establish the standard of care in a legal

14

malpractice case with the need to provide expert medical testimony to support the underlying medical malpractice case. Alterowitz's opinion speaks to the standard of care, breach, and causation elements of the Labairs' legal malpractice claim. Carey admitted the duty and breach elements, and failed to present any evidence tending to show that the dismissal of the Labairs' claims was caused by anything other than Carey's negligent conduct. The District Court's conclusion that the Labairs did not provide sufficient expert testimony to survive summary judgment is therefore not supported by the record.

### 3. The Labairs' injury is the loss of the opportunity to present a claim capable of surviving summary judgment.

¶31 To determine whether Carey's failure to timely file with the MMLP caused the Labairs any damages, we must first precisely define the injury at issue. How we define the injury suffered by the Labairs will dictate whether Carey's negligent conduct was a "but for" cause of such injury. Here, the Labairs are not alleging that the results of their case would have been more favorable if Carey had utilized a different litigation strategy. Instead, the Labairs argue that the loss of the right to bring their medical malpractice claims and pursue a remedy is itself a cognizable injury. The instant case presents a unique situation because the missed statute of limitations not only foreclosed the possibility of a successful outcome in the underlying medical malpractice action, it also deprived the Labairs of any possible recovery through pretrial settlement.

¶32 This Court has previously held that a criminal defendant presented prima facie evidence of an injury when he established that his attorney failed to pursue postconviction relief, thus depriving him of his right to challenge his conviction.

15

*Spencer*, ¶ 14. Other jurisdictions have similarly recognized that the loss of the opportunity to bring a claim can constitute prima facie evidence of an injury. *See Jenkins v. St. Paul Fire & Marine Ins. Co.*, 422 So. 2d 1109, 1110 (La. 1982) ("Causation, of course, is an essential element of any tort claim. However, once the client has proved that his former attorney accepted employment and failed to assert the claim timely, then the client has established a prima facie case that the attorney's negligence caused him some loss, since it is unlikely the attorney would have agreed to handle a claim completely devoid of merit.").

¶33 The District Court determined that what the Labairs lost was merely a claim that would have been unsuccessful at trial. While we agree that the loss of a claim completely devoid of merit is truly no loss at all, we cannot agree with the conclusion that the Labairs' medical malpractice claims were valueless. As noted above, Labairs had retained the services of an expert who opined that Dr. Baumgartner's deficits in care caused the death of the child. This evidence was sufficient to withstand a motion for summary judgment.

¶34 In light of our conclusion that the Labairs presented the requisite expert testimony and evidence to avoid a summary judgment ruling against them, it is clear that what the Labairs lost was the real opportunity to pursue a claim that was capable of surviving summary judgment, and thus may also have been capable of generating a favorable outcome by way of settlement or trial. Under these circumstances and pursuant to the reasoning in *Spencer*, we conclude that the Labairs have presented prima facie evidence

16

that they suffered an injury when they lost the opportunity to pursue their medical malpractice claims.

**4. Carey was the cause-in-fact of the Labairs' injury.**

¶35 The Labairs' case presents a unique type of legal malpractice action. In many cases, legal causation for a loss is squarely in dispute. For example, a legal malpractice action may arise when a lawyer tries a case for her client and loses. The client then sues the lawyer arguing that had the lawyer called a certain witness or proposed a particular legal theory, the case would have been won. In such cases, reasonable minds can disagree over whether the lawyer made a mistake and whether, given other occurrences or issues at trial, this mistake was the legal cause of the client's loss. Many factors could have contributed to the loss. The plaintiff must prove that the claimed error was the legal cause of the injury, which can be a difficult burden.

¶36 In the instant case, however, it is undisputed that Carey negligently failed to timely file the Labairs' medical malpractice case with the MMLP. It is also undisputed that the District Court dismissed the Labairs' medical malpractice claims because of Carey's admittedly negligent conduct. "But for" Carey's negligence, the Labairs would have been able to pursue their medical malpractice claims and would have at least survived summary judgment. While the Labairs still have the burden of demonstrating the amount of damages they incurred as a result of the loss of their claim, it cannot be disputed that a loss occurred and Carey was the legal cause of such loss. Under circumstances such as this—where duty and breach are admitted, and an untimely filing

17

caused the loss of a claim with some value—legal causation can be decided as a matter of law.

### 5. The Labairs are not required to prove at the summary judgment stage that they would have been successful in their underlying medical malpractice case.

¶37    The "suit within a suit" analysis utilized by the District Court required the Labairs to prove that their medical malpractice case would have been successful. *Stott*, 246 Mont. at 305, 805 P.2d at 1307. The problem here is that the District Court imposed on the Labairs the burden of establishing the success of their legal malpractice claim *at the summary judgment stage*; in other words, the District Court required the Labairs to establish that they would have won the case before they could even go to trial. This is not what is intended under *Stott.*

¶38    A plaintiff in a medical negligence action is required to establish that the defendant doctor departed from the applicable standard of care, resulting in plaintiff's injuries. A defendant doctor may be entitled to summary judgment if the plaintiff fails to present competent expert medical testimony to establish these factors. *Estate of Willson*, ¶ 17; *Falcon v. Cheung,* 257 Mont. 296, 303, 848 P.2d 1050, 1055 (1993). However, once the plaintiff comes forward with such expert evidence, summary judgment for the doctor is inappropriate and the case may proceed to trial. We have never obligated a plaintiff in a medical negligence case to establish *in advance of trial* that she will be successful; we require only that she present competent medical evidence to withstand summary judgment. It therefore makes no practical or legal sense to obligate a plaintiff in the "suit within the suit" case to prove she would have been "successful" in the

medical negligence case as a prerequisite to proceeding to trial in the legal malpractice matter. To do so would impose upon her a higher burden than would have been imposed on her had her attorney *not* breached his duty of care to her—a clearly unfair hurdle. Thus, we conclude that at the summary judgment stage, a plaintiff must simply establish that, but for her attorney's negligence, she would have been able to present sufficient evidence to withstand summary judgment for the defendant doctor and reach the jury with her case.

¶39 The District Court also failed to consider that "success" contemplates alternative avenues of recovery. The District Court's approach contemplated nothing short of a full jury trial, and failed to account for the most common form of client recovery—pretrial settlement. Applying the "suit within a suit" framework at the summary judgment stage to this unique subset of legal malpractice claims involving missed statute of limitations also raises other concerns:

> Other problems await those who do proceed with the "trial within a trial." For example, the attorney in the original action may have negligently failed to pursue the discovery that would have insured success. If the results of that same discovery are now necessary to prove the merit of the underlying claim—and the passage of time has precluded obtaining that information— the attorney by his own negligence will have protected himself from liability. In such a case, the more negligent the attorney, the more difficult is the plaintiff's task of proving causation.

Erik M. Jensen, *The Standard of Proof of Causation in Legal Malpractice Cases*, 63 Cornell L. Rev. 666, 671 (1978).

¶40 In sum, the Labairs presented sufficient evidence to withstand the motion for summary judgment brought by Carey. We therefore conclude that the District Court

19

erred in granting summary judgment to Carey. We hold that the Labairs are entitled to summary judgment on the issues of duty, breach, and causation,[5] and are entitled to proceed to trial in their legal malpractice case as hereinafter set forth.

## C. Trial on Remand

¶41 We have concluded that the Labairs' loss of their medical malpractice case was an injury, but the damages associated with that injury remain unproven. At trial, the Labairs must establish that it is more probable than not that they would have recovered a settlement or a judgment against Dr. Baumgartner but for Carey's negligence, as well as the value of the lost settlement and/or judgment. This is where the "suit within a suit" analysis discussed in *Stott* comes into play.

¶42 In *Stott*, we said that in order for plaintiffs to prevail against their lawyers in a legal malpractice case arising out of a botched case against a bank, "they must show that their underlying action against First Bank would have been successful." *Stott*, 246 Mont. at 305, 805 P.2d at 1307. Similarly, we held in *Lorash* that plaintiffs must establish that "but for" their attorney's negligence, "the client would have been successful in the prosecution or defense of the action." *Lorash*, 236 Mont. at 24, 767 P.2d at 1337. These cases beg the question of what it means for a plaintiff to prove she "would have been successful," as it would be literally impossible to prove one would have been successful in an action that never took place.

---

[5] Carey was the cause-in-fact of the Labairs' loss of their medical malpractice case, though it remains to be demonstrated whether the loss of their claims resulted in damages.

¶43     In *Lieberman v. Employers Ins. of Wausau*, 419 A.2d 417, 426 (N.J. 1980), which

we cited as authority in *Stott*, the court said that in the legal malpractice case, the plaintiff

"must show by a preponderance of the evidence what injuries he suffered as a

[proximate] consequence" of the malpractice. The court went on to say that the plaintiff

could proceed "by offering the evidence which would have been submitted" in the

underlying case; thus, the "suit within the suit." *Lieberman*, 419 A.2d at 426. However,

the court further observed that "it should be within the discretion of the trial judge as to

the manner in which the plaintiff may proceed to prove his claim for damages and that

the appropriate procedure should, if not otherwise agreed upon between the parties, be

settled through pretrial proceedings. . . . [This could] include the 'suit within the suit'

approach or any reasonable modification thereof." *Lieberman*, 419 A.2d at 427.

¶44     Different types of legal malpractice cases will require different types of evidence

and presentation. For example, a botched will-drafting case will call for proof wholly

different than that required in a case arising from a botched personal injury trial. The

manner of proof in any type of legal malpractice case will therefore have to be tailored to

the nature of the loss sustained. Here, for example, one reason that a strict "suit within a

suit" format might be impracticable is that it may not easily accommodate evidence

reflecting what the settlement value of the case would have been but for Carey's

negligence. As noted above, this is a component of the Labairs' injury.

¶45     On remand, the court and the parties shall settle the manner in which this case

shall be tried. However the evidence is presented, it shall be incumbent on the plaintiffs

to show that they more probably than not would have recovered a jury verdict or

21

settlement against Dr. Baumgartner but for Carey's negligence, and the value of the claim that was lost. Testimony and evidence regarding damages occasioned by attorney malpractice may not be speculative and must afford a sufficient basis for an award of damages. *Merzlak*, 252 Mont. at 530, 830 P.2d at 1280.

¶46 Finally, we reject Justice Baker's suggestion in ¶ 70 of her Concurrence and Dissent that on remand, the District Court should consider the merits of Carey's argument that because the Labairs failed to invoke the savings statute they failed to mitigate their damages. The merits of the savings statute notwithstanding, we deem it inappropriate to allow counsel whose actions caused the loss of Labairs' claims in the first place, to affirmatively argue to the jury that the Labairs should be penalized for failing to act to correct his mistake.

## CONCLUSION

¶47 For the foregoing reasons, we reverse the District Court's judgment and remand for further proceedings in accordance with this Opinion.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS

22

Justice James C. Nelson, concurring.

¶48 I concur in the Court's decision—including the Court's holding that an attorney whose actions caused the loss of the underlying claim in the first place cannot then rely on the savings statute (§ 27-2-407, MCA) as a defense in the legal malpractice action and affirmatively argue that the plaintiffs should be penalized for failing to act to correct his mistake. Opinion, ¶ 46. I write separately to address the "suit within a suit" concept in further detail, and to acknowledge points that I made in a prior, unpublished dissent concerning the doctrine of proximate cause.

## I. Suit Within a Suit

¶49 The injury which the Labairs sustained as a result of Carey's negligence was the loss of the opportunity to bring their medical malpractice claim and pursue a remedy for the loss of their newborn baby. This opportunity included both the right to present the case to the jury and the prospect of a settlement prior to going to trial. Opinion, ¶¶ 31-34. This opportunity was lost for one single, undisputed reason: Carey breached his duty of care by failing to timely file with the MMLP. But for Carey's breach, the Labairs would not have lost the opportunity to pursue their medical malpractice claim to trial, or at least as far as a pretrial settlement. Liability, therefore, has been established in this case, and the Labairs are entitled to summary judgment on the elements of duty, breach, and causation. There remains only the question of damages. Opinion, ¶ 40.

¶50 We have said that "[t]he proper measure of damage in an attorney malpractice action is the difference between the client's recovery and the amount that would have been recovered by the client except for the attorney's negligence." *Merzlak v. Purcell*,

252 Mont. 527, 529, 830 P.2d 1278, 1279 (1992). Translated to the present context, where the client recovered nothing due to the attorney's negligent failure to properly file the claim, the question is how much would have been recovered had the claim been properly filed, i.e., How much was the lost claim worth? The plaintiffs will need to show, on a more-probable-than-not basis, that their underlying claim would have resulted in a verdict in their favor, or that it at least had settlement value. Opinion, ¶¶ 41, 45. The defending attorney, on the other hand, will attempt to rebut this showing. It will then be up to the jury to decide who is right—that is, what the likely outcome of the plaintiffs' suit would have been (had their attorney not negligently failed to properly file the claim) and what value they likely would have gained out of this disposition.

¶51 In *Stott v. Fox*, 246 Mont. 301, 805 P.2d 1305 (1990), the Court adopted the proposition that in order for the plaintiffs to prevail against the defendant attorney in their legal malpractice action, "they must show that their underlying action . . . *would have been successful*. Some courts, in describing this procedure, have termed it as a 'suit within a suit.'" 246 Mont. at 305, 805 P.2d at 1307-08 (emphasis added) (quoting *Lieberman v. Employers Ins. of Wausau*, 419 A.2d 417, 426 (N.J. 1980)). Under this approach, "[t]he trier of fact in a legal malpractice case is called upon, in effect, to decide what the outcome for the plaintiff would have been in the earlier case if it had been tried properly . . . . Put another way, the second trier of fact will be asked to decide what a reasonable jury or fact finder would have determined, but for the attorney's negligence." *Richards v. Knuchel*, 2005 MT 133, ¶ 18, 327 Mont. 249, 115 P.3d 189.

¶52 As the Court clarifies, a plaintiff in a legal malpractice action is not required *at the summary judgment stage* to prove, as a prerequisite to proceeding to trial, that she "would have been successful" in her underlying medical malpractice case. Opinion, ¶¶ 37-40. Rather, "a plaintiff must simply establish that, but for her attorney's negligence, she would have been able to present sufficient evidence to withstand summary judgment for the defendant doctor and reach the jury with her case." Opinion, ¶ 38. Furthermore, at the trial on the legal malpractice claim, the plaintiff need not necessarily show that she "would have been successful" at a trial on the underlying claim—the "suit within a suit" which, as the Court notes, is a literal impossibility. Opinion, ¶ 42. Rather, the manner of proving damages must be "tailored to the nature of the loss sustained." Opinion, ¶ 44.

¶53 While I concur in this holding for purposes of the present case, I question whether the "suit within a suit" framework is *ever* an appropriate requirement to impose on a legal malpractice plaintiff in order to establish damages. In my view, it makes no sense—indeed, it is unjust—to require the legal malpractice plaintiff to bear the burden of proving that her underlying suit "would have been successful" but for her attorney's blunder. Such an approach, which Carey relies on here, allows the attorney to benefit from his own wrongdoing. The attorney's negligence is what put the plaintiff in this situation in the first place. Having botched the underlying case, the attorney should not be able to avoid paying damages by aligning himself with the defendant in the underlying case and arguing (to the fact-finder in the legal malpractice case) that the plaintiff's underlying claim lacked merit or would not have been successful. If the underlying claim

25

was that tenuous, the attorney was ethically obligated not to pursue it.[1]  At the very least, the attorney should have advised the plaintiffs, within the statute of limitations, that he could not ethically pursue the case and that they should seek other counsel and a second opinion.  The attorney cannot simply let the statute of limitations run, without giving his clients the opportunity to seek other counsel and pursue their claim within the limitations period provided by law.

¶54    Furthermore, the "would have been successful in the underlying suit" standard is totally unrealistic.  Who knows what a jury in an actual medical malpractice trial would have determined?  The jury's verdict is a function of what evidence was offered, how that evidence came into the trial, how the jury determined the credibility of the witnesses, what evidence the jury believed or did not believe, what instructions were given, how the jury's deliberations proceeded, etc.  One jury could have awarded substantial damages to the plaintiff, while another jury, on a different day and in a different trial with different jurors, could have rendered a defense verdict.

¶55    The focus in the legal malpractice trial must remain on the injury actually caused by the attorney—here, the loss of opportunity to present the underlying claim, or at least to settle it, and the probable value of that claim.  Those issues can be determined through

---

[1] "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein:  (1) without having first determined through diligent investigation that there is a bona fide basis in law and fact for the position to be advocated; (2) for the purpose of harassment, delay, advancement of a nonmeritorious claim or solely to gain leverage; or (3) to extend, modify or reverse existing law unless a bona fide basis in law and fact exists for advocating doing so."  Mont. R. Prof. Conduct 3.1(a) (paragraph breaks omitted).

something short of a full-blown medical malpractice suit within the legal malpractice suit.

¶56 It is for these reasons that I conclude the "suit within a suit" framework should not have been adopted in the first place.[2] The plaintiff should not have to try her medical malpractice case to her legal malpractice jury in order to establish entitlement to damages. In my view, the most that reasonably can be required of the legal malpractice plaintiff is that she show what the more-probable-than-not outcome of her underlying case was—not that she necessarily "would have been successful" but for her attorney's negligence. The plaintiff's burden under this "probable outcome" test will depend on the nature of the underlying case.

¶57 Where, as here, the underlying suit involved a medical malpractice claim, it will be necessary to present expert analysis of the medical facts and evidence, as well as past jury verdicts in similar cases, and testimony as to what the more probable disposition of the claim would have been—such as a jury verdict of $2 million, or a pretrial settlement of $20,000. It will be up to the jury to decide whether the plaintiff has presented the more credible assessment of the likely outcome of her underlying claim. Under no circumstances, however, should the negligent attorney be permitted to align himself with the defendant physician in arguing that the medical malpractice claim was not viable or

---

[2] Ironically, the court in *Lieberman* (the precedent which this Court cited in adopting the "suit within a suit" framework, *see Stott*, 246 Mont. at 305, 805 P.2d at 1307-08) determined that the plaintiff there "should *not* be restricted to the more or less conventional mode of trying a 'suit within a suit' to establish entitlement to damages." *Lieberman*, 419 A.2d at 426 (emphasis added).

would not have been successful. Having created the situation, the defendant attorney should not then be permitted to benefit from his own wrongdoing.

## II. Proximate Cause

¶58 I wrote a dissent in *Penn v. Third Jud. Dist. Ct.*, OP 10-0158 (Mont. June 29, 2010),[3] where I contended that this Court should jettison the doctrine of "proximate cause," along with the concept of "superseding intervening cause." *Penn*, at 9-16, 2010 Mont. Dist. LEXIS at **10-26 (Nelson, J., dissenting). I continue to maintain that these concepts unnecessarily complicate the law of negligence. Without going into an extensive analysis here, the foreseeability considerations which bear on superseding intervening cause can be, and are, addressed within the context of duty. In other words, I would conflate duty and proximate cause, since they really address the same seminal issue: limiting a negligence defendant's liability to foreseeable plaintiffs and foreseeable harms.

> If duty is defined in terms of foreseeable harms—which it is—then the question of superseding intervening cause can be resolved at the duty stage: A defendant's duty extends to those harms that are foreseeable in light of his conduct; thus, if a superseding intervening cause enters the fray and causes a harm that was not reasonably foreseeable (again, in light of the defendant's conduct), then the defendant is not liable for that harm because he owed no duty to the plaintiff to protect against that harm. His duty is to protect persons within the range of apprehension from harms that are reasonably foreseeable in light of his conduct.

*Penn*, at 13-14, 2010 Mont. Dist. LEXIS at *20 (Nelson, J., dissenting); *see also Busta v. Columbus Hosp.*, 276 Mont. 342, 367-70, 916 P.2d 122, 137-38 (1996), and the

---

[3] This Court's Order in *Penn* is presently available at 2010 Mont. Dist. LEXIS 197. Although Lexis designates this as an order of the Third Judicial District Court, it is in fact an order of this Court concerning a petition for writ of supervisory control.

authorities cited therein. Meanwhile, however, the Court has correctly set forth the law on proximate cause as it presently stands, and I join the Court's clarifications of that law as applied to legal and medical malpractice claims. Opinion, ¶¶ 21-24.

¶59 With the foregoing observations, I concur in the Court's decision.


/S/ JAMES C. NELSON


Justice Jim Rice, concurring.

¶60 I agree with the result reached by the Court but not all that is said in the Opinion, as I understand it.

¶61 In my view, *Spencer, see* Opinion, ¶ 32, is weak authority for our holding here, as that case involved the lost opportunity to pursue a statutory postconviction relief proceeding, not a tort action that is subject to the testing of summary judgment. While *Spencer* supports the notion that a loss of opportunity can be an injury, the opportunity to file a postconviction relief petition is very different from "the possibility of a successful outcome in the underlying medical malpractice action," or "possible recovery through pretrial settlement." Opinion, ¶ 31. These are tort action remedies and, in my view, these lost opportunities arise only if it is established that the underlying medical case (the "suit within the suit") would have been able to survive summary judgment. That requires an analysis of whether duty, breach, causation, and damages would have been established satisfactorily under summary judgment standards. Carey's admission of duty and breach alone did not cause the lost opportunity for a successful outcome in the medical

29

malpractice action. Rather, Carey's breach only caused the loss of opportunity to timely file and proceed with the medical malpractice action—which would then have been subject to summary judgment testing on its merits. Until so tested, Labairs' medical malpractice claim may very well have been "valueless." Opinion, ¶ 33. Thus, I would not conclude that Carey's breach of duty alone established causation as a matter of law in the present legal case. Opinion, ¶ 36.[1]

¶62 However, I agree that Labairs have here demonstrated by expert testimony that they had a viable medical malpractice claim (duty, breach, causation, and damages) that would have survived summary judgment in the underlying medical malpractice case. That being so, they also established causation in the current legal malpractice case because they lost the opportunity to try their medical malpractice case to a verdict. Thus, they have earned the opportunity to convince a jury in the legal case that Carey caused their damages and the amount of those damages.

¶63 I concur.


/S/ JIM RICE

---

[1] I would not conclude that loss of settlement potential is a stand-alone lost opportunity. *See* Opinion, ¶¶ 31, 34, 39. There is no "right" to a settlement, which is an extra-judicial action of the parties taken for any number of reasons, some of which are completely unrelated to a claim's legal validity.

Justice Beth Baker, concurring in part, dissenting in part.

¶64 I agree with the Court's conclusion that since the Labairs presented sufficient evidence to demonstrate that they could have withstood a summary judgment motion in the underlying medical malpractice case, Carey's motion for summary judgment on the Labairs' legal malpractice claims should have been denied. Labairs now must prove that Carey's negligence caused them a compensable loss. I concur with the Court's opinion to that extent and write separately for two reasons.

¶65 First, while the District Court improperly concluded that the affidavit of attorney Douglas Buxbaum "establishes that Plaintiffs' underlying medical malpractice claim would not have been successful," it is unnecessary for the Court in this opinion to further address Buxbaum's affidavit or the proper scope of any expert testimony that ultimately may be offered at trial. A trial court is vested with considerable discretion in ruling on the admissibility of expert testimony. "We do not simply determine whether this Court would have made the same ruling, but determine whether the district court 'acted arbitrarily without conscientious judgment or exceeded the bounds of reason' and prejudiced a substantial right of the appellant." *Beehler v. E. Radiological Assocs., P.C.*, 2012 MT 260, ¶ 17, 367 Mont. 21, ___ P.3d ___ (quoting *Weber v. BNSF Ry. Co.*, 2011 MT 223, ¶ 39, 362 Mont. 53, 261 P.3d 984). The Court does not explain what portions of Buxbaum's affidavit in particular it finds objectionable or which of his statements it believes purport to "offer expert medical opinions" in the case. Opinion, ¶ 28. With the

31

case being remanded for trial, the opinion only invites additional questions about what testimony, if any, Buxbaum may be allowed to give.

¶66    As the Court holds, the question at trial will be whether Carey's breach of the standard of care caused any damages to Labairs, requiring them to prove that they more probably than not would have obtained a favorable outcome in the underlying medical malpractice case.  Opinion, ¶ 41.  "The courts use an objective standard, rather than a subjective standard, when determining whether a former client would have fared better in the underlying suit. . . .   The objective standard[] demands the trier of fact view the underlying suit from the standpoint of what a reasonable judge or jury would have decided but for the attorney's negligence."  *In re Alan DeAtley Litig.*, No. CV-06-0278, 2008 U.S. Dist. LEXIS 68340 at **21-25 (E.D. Wash. Aug. 29, 2008) (citing cases); *see also Chocktoot v. Smith*, 571 P.2d 1255, 1258 (Or. 1977).  Buxbaum may be qualified to testify on some matters related to that issue, given his expertise in handling similar cases.  Since the Court leaves it to the trial court and the parties to "settle the manner in which this case shall be tried," Opinion, ¶ 45, I would defer to the District Court to review and consider the matter of expert testimony at trial.

¶67    Second, the Court fails substantively to address Carey's alternative argument that the Labairs' own actions defeated their underlying case because they could have but failed to refile their complaint after the Medical Legal Panel's decision.  Carey cites § 27-2-407, MCA, which provides:

> If an action is commenced within the time limited for the action and a judgment is reversed on appeal without awarding a new trial or the action is terminated in any other manner than by a voluntary discontinuance, a

32

> dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff . . . may commence a new action for the same cause after the expiration of the time limited and within 1 year after a reversal or termination.

"A civil action is commenced by filing a complaint with the court." M. R. Civ. P. 3. The underlying medical malpractice complaint was filed in district court on September 14, 2006. On November 16, 2007, it was dismissed, apparently without prejudice, because Carey had neglected to file the medical malpractice claim with the Montana Medical Legal Panel prior to filing in court. *See* § 27-6-701 ("No malpractice claim may be filed in any court against a health care provider before an application is made to the panel and its decision is rendered."). By the time the complaint was dismissed, the Labairs already had filed their application for review with the Medical Legal Panel; they received a decision in December 2007.

¶68    "[T]he fundamental purpose of § 27-2-407, MCA, commonly referred to as the 'saving statute,' is to allow a plaintiff to have her claim decided on its merits despite the expiration of the statute of limitations." *Brilz v. Metro. Gen. Ins. Co.*, 2012 MT 184, ¶ 16, 366 Mont. 78, 285 P.3d 494. It is invoked "to avoid the harsh forfeiture of plaintiff's rights where the plaintiff diligently and in good faith pursues an action only to have it dismissed on procedural grounds." *Brilz*, ¶ 16 (quoting *Allen v. Greyhound Lines, Inc.*, 656 F.2d 418, 422 (9th Cir. 1981)). A dismissal without prejudice is not a judgment on the merits of the case. *Schmitz v. Engstrom*, 2000 MT 275, ¶ 11, 302 Mont. 121, 13 P.3d 38. The Labairs arguably had until November 2008 to commence a new action, but failed to do so.

33

¶69 I am not persuaded by Carey's argument that Labairs' failure to refile their complaint entitles Carey to summary judgment on the legal malpractice claim, given that it was his failure to file the complaint properly in the first place that caused its dismissal. However, I would not foreclose Carey from arguing in the District Court that Labairs failed to mitigate their damages. *See Bitterroot Int'l Sys. v. Western Star Trucks, Inc.*, 2007 MT 48, ¶ 69, 336 Mont. 145, 153 P.3d 627 ("The question of whether an injured party violated its duty to mitigate damages presents a question for the trier of fact.") (citing *Bronken's Good Time Co. v. J. W. Brown and Assocs.*, 203 Mont. 427, 433, 661 P.2d 861, 864 (1983)); *McPherson v. Kerr*, 195 Mont. 454, 459, 636 P.2d 852, 855 (1981) ("The duty to reduce or mitigate damages is a positive one upon the injured person, but it has limits. The test is: What would an ordinary prudent person be expected to do if capable, under the circumstances? . . .") (quoting *Spackman v. Ralph M. Parsons Co.*, 147 Mont. 500, 505, 414 P.2d 918, 921 (1966).

¶70 As we pointed out in *Brilz*, this Court has held that "a party's '*bona fide* attempt' to commence an action was sufficient to invoke the statute, even though her original complaint contained insufficient allegations to state a good cause of action." *Brilz*, ¶ 17 (citing *Clark v. Or. Short Line R.R. Co.*, 38 Mont. 177, 180, 184-86, 99 P. 298, 300, 301-02 (1909)). The District Court has not yet had a chance to consider this issue as applied to the facts of this case or to the question of mitigation of damages and the Court's decision to reverse summary judgment should not preclude it from doing so.

/S/ BETH BAKER

34