FILED

06/09/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0688

DA 24-0688

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 124

DR. DAVID BELLAMAH,

     Plaintiff and Appellant,

  v.

DENNIS E. LIND, ESQ., MOLLY K. HOWARD,
ESQ., MATTHEW A. MCKEON, ESQ., and
DATSOPOULOS, MACDONALD & LIND, P.C.,

     Defendants and Appellees.

APPEAL FROM:   District Court of the Fourth Judicial District,
                 In and For the County of Missoula, Cause No. DV-23-301
                 Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

          Marybeth M. Sampsel, Measure Law, PC, Kalispell, Montana

       For Appellee:

          Fred Simpson, Trevor Uffelman, Hall & Evans, LLC, Missoula,
          Montana

          Ryan C. Addis, Hall & Evans, LLC, Billings, Montana

                    Submitted on Briefs:  February 11, 2026

                           Decided:  June 9, 2026

Filed:

                    _____
                             Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1      Dr. David Bellamah appeals from the November 22, 2024 order of the Fourth Judicial District Court, Missoula County, granting defendants Dennis E. Lind, Esq., Molly K. Howard Esq., Matthew A. McKeon, Esq., and Datsopoulos, MacDonald & Lind, P.C.'s (hereinafter collectively "DML") motion for summary judgment. Bellamah asserts the District Court erroneously analyzed his legal malpractice claim as a "lost appeal" claim and, as a result, ignored genuine issues of material fact which precluded summary judgment. We restate the issue on appeal as follows:

*Whether the District Court erred in granting DML's motion for summary judgment.*

## FACTUAL AND PROCEDURAL BACKGROUND

**Underlying Dissolution Proceedings**

¶2      In September 2017, Bellamah retained DML to represent him in proceedings regarding the dissolution of his marriage. During the course of the representation, Bellamah and DML became aware of a federal investigation into Bellamah's medical practice regarding fraudulent claims made under the False Claims Act. The availability of funds to cover any potential financial obligation related to the False Claims Act was from thereon considered during the dissolution proceedings.

¶3      On July 19, 2018, DML represented Bellamah in a settlement conference with his former spouse, Carolyn. At the conclusion of the conference, a Marital Property Settlement Agreement (MPSA) was negotiated between the parties and drafted by Carolyn's counsel. The MPSA included a provision related to stocks, bonds, and securities held by the parties' jointly in what was referred to as the "Johnson Account." The provision stated, "This

2

account shall be held as 'tenants in common' and used to pay restitution or fines, but not defense costs, including attorneys' fees." The MPSA also included provisions related to the payment of child support. Specifically, the MPSA provided, "Child support has been calculated in accordance with the Montana Child Support Guidelines" and it "shall be paid by [Bellamah] to [Carolyn] in the sum of $8,324.00 per month . . . payable on the first day of each month until the child attains the age of 18 years or graduates from high school whichever is later . . . ." The MPSA was filed and adopted by the district court in its Findings of Fact, Conclusions of Law, and Decree of Dissolution of Marriage, issued August 7, 2018.

¶4 In December 2021, Bellamah entered into a settlement agreement with the United States to resolve the federal government's pending fraud allegations under the False Claims Act. The settlement agreement, which was based in part on the amount and availability of funds held in the Johnson Account, required Bellamah to "pay to the United States $3,746,324.89 (Settlement Amount), plus interest, if applicable, of which $1,923,861.70 is restitution and the remaining $1,822,463.19 is settlement of a damage multiplier under § 31 U.S.C. 3729(a)(1)."

¶5 Following the settlement of the fraud allegations, Bellamah sought release of the Johnson Account funds to cover the payment due to the federal government. Litigation between Bellamah and Carolyn ensued, with both parties filing motions to enforce the MPSA. The primary issue set forth in the litigation was whether the MPSA, which called for the release of funds for the purpose of paying "any restitution or fines" in the government's case, called for the release of funds to cover a damage multiplier. At the

3

hearing on the cross-motions, DML argued on behalf of Bellamah that the Johnson Account provision "set aside" funds to cover "whatever monetary amount [] necessary to satisfy the Department of Justice with respect to their allegations." When asked about the language used in the MPSA, Dennis Lind explained that the firm was generally unfamiliar with the False Claims Act, stating, "I didn't know about the False Claims Act and what language might be there," and explaining "there wasn't any intense thought given to, you know, what might be included in some federal regulation"; "we didn't look up the False Claims Act to see how they described what they might do." Lind argued that though the settlement referenced a damage multiplier, it was nonetheless restitution under the provision, explaining, "That's what we were doing here, saying, we're going to restore, we're going to provide restitution back to the – to the Department of Justice . . . ." Counsel for Carolyn countered, explaining that "those words 'restitution' and 'fine' did have meaning in our room," "were things we [were] contemplating with separate counsel," and ultimately were not covered by the language used in the Johnson Account provision.

¶6      On March 11, 2022, following the hearing on the parties' cross-motions, Judge Deschamps issued an order ruling that only $1,596,805.22 of the Johnson Account funds could be used to satisfy Bellamah's settlement. Bellamah met with DML to discuss his options. Rather than appeal the district court's order, DML advised Bellamah to file a "motion to reconsider" accompanied by an affidavit from an expert on the False Claims Act who, DML claimed, would be able to "educate" the court as to the damage multiplier being restitution or a fine under the language of the MPSA. On April 8, 2022, DML filed

4

its Motion to Reconsider, accompanied by the supporting expert affidavit on Bellamah's behalf.

¶7 On May 4, 2022, Bellamah again met with DML. At no time during the meeting did DML advise Bellamah as to the deadline for appealing the district court's order, nor did DML provide Bellamah with the timeline for the motion to reconsider or inform Bellamah that the motion would be deemed denied if it was not ruled upon within 60 days of filing, pursuant to M. R. Civ. P. 59(f).

¶8 Bellamah followed up with DML again on June 6, 2022—59 days after the motion to reconsider was filed. DML told Bellamah they were "currently just waiting on the Judge to rule on the motion." DML did not mention Rule 59(f) or that the motion would be deemed denied if it was not ruled on the next day.

¶9 Ultimately, the district court failed to rule on the motion and it was deemed denied on June 7, 2022. DML did not inform Bellamah of the denial or the 30-day window to appeal under M. R. App. P. 4(5)(a)(i). When Bellamah contacted DML weeks later on June 28, 2022, DML merely informed Bellamah they were "still waiting on the Judge to rule" and it was "[k]ind of just a waiting game until we receive a written Order."

¶10 On July 14, 2022, Carolyn filed a Notice of Denial of Motion for Reconsideration and Expiration of Time to File an Appeal. DML did not inform Bellamah of the filing or provide him a copy of the notice. At this time, DML did however inform Bellamah that the motion was deemed denied and explained that the 30-day window to appeal the denial had already passed.

5

**Legal Malpractice Proceedings**

¶11 On March 20, 2023, Bellamah filed a complaint against DML in Missoula County District Court alleging "[DML] breached their duty to [Bellamah] by failing to use reasonable care and skill in their representation of [him]." Specifically, the complaint asserts: DML represented Bellamah in his dissolution of marriage proceedings, including during the negotiation and drafting of the MPSA; DML "failed to revise the language of the MPSA to reflect that the support obligation was a *per child* amount"; DML "failed to correctly advise [Bellamah] concerning the modification of his child support upon his oldest child reaching the age of majority," which had not been reduced accordingly "because the MPSA did not reflect a per child amount"; DML filed a motion to reconsider supported by an expert who did not testify at the hearing; DML did not advise Bellamah as to the timelines for the motion being deemed denied; DML informed Bellamah they were "still waiting on the Judge to rule" weeks after the motion had already been deemed denied; DML failed to inform Bellamah of the July 7, 2022 deadline to appeal; DML failed to inform Bellamah of the Notice of Denial of Motion for Reconsideration and Expiration of Time to File an Appeal filed by his former spouse; DML failed to timely appeal the denial of his motion for reconsideration; and "[DML's] breach caused damage[] to [Bellamah] in an amount to be proven at trial."

¶12 DML sought further clarification regarding Bellamah's negligence claim through discovery. On May 7, 2024, Bellamah provided the following response to DML's Interrogatory No. 10:

**INTERROGATORY NO. 10:** Identify each act or omission by Defendants that supports your allegation in Paragraph 29 of your Complaint that Defendants failed to use reasonable care and skill in representing you.

**ANSWER:** Objection, this Interrogatory is cumulative, overly broad, unduly burdensome, and improperly calls for a legal conclusion. Without waiving said objections, Plaintiff outlined the factual allegations in his Complaint in Paragraphs 6-26. Plaintiff further alleges that Defendants failed to use reasonable care and skill by failing to timel[y] file Notice of Appeal, failing to advise Plaintiff regarding the timelines set forth in M.R.Civ.P. 60(b), failing to adequately caption and brief a Motion for Reconsideration, failing to present necessary evidence and testimony at the March 2022 hearing, and/or failing to adequately represent Plaintiff's interests in the negotiating and drafting of the Marital and Property Settlement Agreement, as well as failure to represent Dr. Bellamah's interests in the drafting and negotiating of the child support agreement. However, discovery is ongoing and may lead to additional factual allegations.

¶13   On July 26, 2024, six months before the close of discovery, DML filed a motion for summary judgment. In the brief supporting its motion, DML conceded that it owed a duty to Bellamah as his counsel in the dissolution proceedings. DML further conceded that it had "failed to appeal [the] denial of [Bellamah's] Motion to Reconsider within the time limit prescribed by the Montana Rule of Appellate Procedure 5(a)(I) [sic]." Instead of challenging the standard of care or Bellamah's allegations regarding its conduct, DML asserted the sole issue before the court to be "whether [DML's] failure to appeal [Bellamah's] Motion to Reconsider _caused_ [Bellamah's] alleged damages." Citing our decision in _Richards v. Knuchel_, 2005 MT 133, 327 Mont. 249, 115 P.3d 189, DML purported the issue of causation to be a question of law appropriate for summary judgment. DML further argued the district court's ruling on enforcing the MPSA had been proper and was unlikely to be reversed on appeal, and thus DML's failure to appeal did not cause Bellamah injury. To support this position, DML filed an affidavit from attorney Gary

7

Zadick, in which Zadick cited Judge Deschamps's "significant history of issuing rulings that are affirmed by the Montana Supreme Court" and opined that the district court's denial of the underlying motion to reconsider would have been affirmed had DML filed a timely appeal. Accordingly, DML argued no genuine issue of material fact existed as to causation and it was therefore entitled to summary judgment as a matter of law.

¶14 In response, Bellamah cited the allegations set forth in his complaint and Interrogatory No. 10 to stress that his negligence claim was not limited to the firm's failure to file a timely appeal. Rather, according to Bellamah, DML committed various, ongoing and interconnected acts of malpractice throughout its representation, tainting the record and materially damaging Bellamah's position prior to DML's failure to appeal. Thus, Bellamah argued, to the extent he would have lost on appeal, that loss was due to the negligent work of DML, and was therefore a question of fact not suitable for summary judgment.

¶15 In its reply brief supporting its motion for summary judgment, DML maintained that Bellamah's claim was based solely on a lost appeal, and argued the additional claims of negligence raised by Bellamah, including the allegations regarding the child support provision, were unpled and unsupported, and therefore did not create any genuine issue of material fact to preclude summary judgment. In addition to the reply brief, the firm filed affidavits from numerous attorneys, including: defendants Dennis Lind, Matthew McKeon, and Molly Howard of DML; counsel for Carolyn who averred to opposing any prospective appeal; and Jane Cowley, who provided a statement as to the standards used in calculating child support.

¶16   Following hearing, the District Court issued its order granting summary judgment for DML.  The court determined Bellamah's lost appeal would have been unsuccessful as a matter of law and was therefore not the cause of any injury.  The District Court further concluded "[n]o new allegations raised for the first time in discovery and/or not raised in the pleadings create[d] an issue of fact on Plaintiff's claim that Defendants were negligent for failing to appeal the District Court's decision in the underlying action."  Bellamah appeals.

## STANDARD OF REVIEW

¶17   We review a district court's ruling on summary judgment de novo, using the same M. R. Civ. P. 56 criteria as the district court.  *McAtee v. Morrison and Frampton, PLLP*, 2021 MT 227, ¶ 11, 405 Mont. 269, 512 P.3d 235.  Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3).

## DISCUSSION

¶18   *Whether the District Court erred in granting DML's motion for summary judgment.*

¶19   On appeal, Bellamah maintains the District Court improperly limited the scope of DML's negligence to the firm's failure to timely appeal, ignoring genuine disputes of material fact as to DML's pre-appeal negligence.  DML counters, arguing Bellamah's complaint was limited to just two theories of negligence: DML's failure to appeal and

DML's failure to correctly advise on modifying the child support provision.[1] DML asserts the District Court properly determined DML's failure to appeal did not injure Bellamah because the underlying ruling on the MPSA was legally correct and the firm's advice regarding the child support provision—while pled—was factually and legally unrelated to any cognizable harm. DML further asserts Bellamah's allegations of negligence as to DML's drafting of the MPSA and its representation at the March 2022 hearing to enforce the MPSA were new unpled theories of liability which the District Court properly declined to consider. Additionally, DML argues summary judgment was proper on account of Bellamah's failure to support his claims with expert testimony establishing a breach of the standard of care.

¶20 To prevail on a legal malpractice claim, a plaintiff must show by the preponderance of the evidence: (1) the attorney owed the plaintiff a duty of care; (2) the attorney breached the duty of care by failing to use reasonable care and skill; (3) the plaintiff suffered an injury; and (4) the attorney's conduct caused the injury alleged. *Labair v. Carey*, 2012 MT 312, ¶¶ 20, 24, 367 Mont. 453, 291 P.3d 1160. To establish the applicable standard of care that an attorney owed a plaintiff, expert testimony is generally required "unless the conduct complained of is readily ascertainable by a layman." *Brookins v. Mote*, 2012 MT 283, ¶ 63, 367 Mont. 193, 292 P.3d 347 (quoting *Mont. Deaconess Hosp. v. Gratton*, 169 Mont.

---

[1] Confusingly, DML also asserts in its briefing that "for the first time on appeal, and contrary to the allegations in his Complaint, [Bellamah] now contends that 'This is Not a Lost Appeal Case.'" This statement is simply not true. Bellamah's argument on appeal reflects his argument at the District Court, in which he repeatedly stressed that his negligence claim was not based solely on the lost appeal but on the allegations contained in his complaint and his answer to Interrogatory No. 10.

185, 189, 545 P.2d 670, 672 (1976)). To establish causation in an attorney malpractice case, the plaintiff must provide proof "that the attorney's negligent conduct was a cause-in-fact of the damage alleged, i.e., that the injury would not have occurred 'but for' that conduct." *Labair*, ¶ 24. Accordingly, a "suit within a suit" often needs to be tried, the process for which calls upon a trier of fact "to decide what the outcome for the plaintiff would have been in the underlying case if it had been tried properly." *Labair*, ¶ 26. Thus, a legal malpractice claim generally presents a question of fact—"what a reasonable jury or fact finder would have determined in the underlying case, 'but for' the attorney's negligence." *Labair*, ¶ 26 (citing *Richards*, ¶ 18).

¶21 However, when the *only* negligent conduct in a legal malpractice claim is an attorney's alleged failure to appeal, the underlying record is untainted by the attorney's negligence—there is no issue as to "what a reasonable jury or fact finder would have determined . . . 'but for' the attorney's negligence." *See Richards*, ¶ 19. Rather, the question is "how an appellate court would have ruled, but for the attorney's failure to perfect an appeal." *Richards*, ¶ 19.[2] Thus, the issue is no longer a question of fact, but a question of law, which the district court is to decide "based on the special expertise required to analyze the relevant law and any corresponding rules of appellate procedure." *Richards*, ¶ 22. Since the underlying record and transcript are untainted by the attorney's alleged

---

[2] In briefing, Bellamah asserts *Richards* was overturned by *Labair*. However, in regard to *Richards*, *Labair* merely clarified that proximate cause should only be considered in attorney malpractice claims when the attorney alleges that the chain of causation was severed by an independent intervening cause. *Labair*, ¶ 21. Accordingly, *Labair* only overturned *Richards* to the extent *Richards* included proximate cause in its analysis.

11

negligence, a district court is to "review [] the transcript and record of the underlying action" and apply the same standard of review that would be applied by the appellate court on direct appeal. *Richards*, ¶ 23. *Richards* therefore controls when the alleged malpractice consists solely of failing to perfect an appeal from an otherwise untainted record; it does not resolve causation as a matter of law when the plaintiff alleges that counsel's earlier negligence created or materially impaired the record from which the appeal would have been taken.

¶22 Here, contrary to DML's assertions and the District Court's conclusion, Bellamah's negligence claim is not solely premised upon DML's failure to appeal. As Bellamah set forth in his complaint, DML "breached their duty . . . by failing to use reasonable care and skill in their representation of [him]." While the complaint alleges DML failed to timely appeal, it also specifically states that Bellamah "was advised that the child support amount would be cut in half immediately upon his oldest child reaching the age of majority," but that "DML attorneys failed to revise the language of the MPSA to reflect that the support obligation was a *per child* amount." The complaint further alleges, "DML attorneys failed to correctly advise [Bellamah] concerning the modification of his child support upon his oldest child reaching the age of majority," and "[b]ecause the MPSA did not reflect a per child amount, the support obligation was not reduced upon the oldest child reaching the age of majority." These allegations, if proven, clearly support a negligence claim, yet DML completely failed to address these allegations in its principal brief supporting its motion for summary judgment.

12

¶23    Further, DML failed to address the allegations set forth by Bellamah in response to Interrogatory No. 10, which specifically included DML's failure to represent Bellamah's interests in negotiating and drafting the MPSA with regard to the Johnson Account and child support provisions, as well as DML's failure to present necessary evidence and testimony at the March 2022 hearing on the cross-motions to enforce the MPSA. These allegations of negligent conduct occurred prior to DML's failure to appeal, tainting the underlying record and transcripts, and creating issues of fact as to the likelihood of Bellamah's success on appeal. To hold otherwise would allow an attorney to shield themselves from liability with their own negligence. Consider for example:

> [An] attorney in [an] original action . . . negligently failed to pursue the discovery that would have insured success. If the results of that same discovery are now necessary to prove the merit of the underlying claim—and the passage of time has precluded obtaining that information—the attorney by his own negligence will have protected himself from liability. In such a case, the more negligent the attorney, the more difficult is the plaintiff's task of proving causation.

*Labair*, ¶ 39 (quoting Erik M. Jensen, *The Standard of Proof of Causation in Legal Malpractice Cases*, 63 Cornell L.Rev. 666, 671 (1978)).

¶24    DML asserts Bellamah's allegations regarding the firm's drafting of the MPSA and its representation at the March 2022 hearing did not appear in his complaint and thus, cannot preclude summary judgment. Citing federal pleading requirements and a statement by this Court in *Kostelecky v. Peas in a Pod LLC*, 2022 MT 195, 410 Mont. 239, 518 P.3d 840, DML asserts that parties are not permitted to raise "new unpled theories of liability that are different than those pled under the governing complaint" to preclude summary judgment. *Kostelecky*, ¶ 42. Our statement in *Kostelecky* was however regarding

13

arguments presented to this Court on appeal and not on the scope of a complaint's allegations as to summary judgment.

¶25     It is well settled that "[a] complaint must provide a defendant with notice and an opportunity to defend himself." *Gonzales v. Walchuk*, 2002 MT 262, ¶ 13, 312 Mont. 240, 59 P.3d 377. It must provide "notice of the facts the plaintiff intends to prove" and "the facts must disclose the elements necessary to make the claim." *Gonzales*, ¶ 13 (citation omitted). The complaint must also "demand judgment for the relief the plaintiff seeks." *Gonzales*, ¶ 13 (citation omitted). However, this can be accomplished by a short and plain statement of the claim, which is all the rules require. *Griffin v. Moseley*, 2010 MT 132, ¶ 39, 356 Mont. 393, 234 P.3d 869; M. R. Civ. P. 8(a)(1). "Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." *Griffin*, ¶ 39 (quoting *Spaberg v. Johnson*, 143 Mont. 500, 503, 392 P.2d 78, 80 (1964)).

¶26     In *Griffin*, we considered whether a district court's grant of summary judgment to a defendant doctor in a medical malpractice case was proper where a dispute of material fact existed as to the defendant doctor's pre-surgical treatment of the plaintiff where the plaintiff's complaint did not specifically reference any pre-surgical treatment, but broadly alleged "the actions of [the treating physician] constitute a deviation from the accepted standard of care and constitute negligence which [] caused the injuries to [plaintiff] as described." *Griffin*, ¶¶ 6, 36. The district court concluded summary judgment was proper after finding no textual allegation in the complaint for a failure to exhaust non-surgical

14

therapies before attempting surgery. *Griffin*, ¶ 36. We reversed; while the complaint did not specifically allege negligence regarding pre-surgical treatment, we concluded the claim was encompassed by the plaintiff's broad allegation of negligence and the defendant doctor was nonetheless on notice based on information disclosed during discovery. *Griffin*, ¶¶ 37-39.

¶27 Here, Bellamah's complaint, like the one in *Griffin,* pleaded a professional negligence claim arising from DML's representation in the dissolution proceedings. His discovery response to Interrogatory No. 10, served before DML moved for summary judgment, identified the factual bases he contends supported that claim, including alleged deficiencies in DML's negotiating and drafting of the MPSA, presentation of evidence at the March 2022 hearing, post-judgment motion practice, and deadline advice. Those factual bases did not create a new cause of action; they clarified the alleged breaches supporting the professional negligence claim Bellamah already pleaded. Accordingly, on this Rule 56 record, the District Court construed Bellamah's negligence claim too narrowly when it confined the claim solely to DML's failure to appeal.

¶28 Finally, DML asserts summary judgment was proper because Bellamah failed to support his allegations of negligence with expert testimony showing a breach of the standard of care. DML is correct in that expert testimony is generally required in professional negligence cases to establish the standard of care and the breach of that standard. *Brookins*, ¶ 63. However, it is the burden of the party seeking summary judgment to initially show "a complete absence of any genuine issue of material fact on the Rule 56 record and that the movant is accordingly entitled to judgment as a matter of

15

law." *Kipfinger v. Great Falls Obstetrical & Gynecology Assocs.*, 2023 MT 44, ¶ 14, 411 Mont. 269, 525 P.3d 1183 (citations omitted). The burden then shifts to the non-moving party to show either the existence of a genuine issue of material fact or that the moving party is nonetheless not entitled to judgment as a matter of law. *Kipfinger*, ¶ 14.

¶29 Here, expert testimony was not required for Bellamah to meet the Rule 56 responsive burden created by DML's motion as framed. DML's opening summary judgment motion did not seek judgment on the full scope of Bellamah's alleged pre-appeal negligence; it framed the dispositive issue as whether a hypothetical appeal would have succeeded under *Richards* and expressly conceded, for purposes of that argument, that DML failed to perfect an appeal. Rather than dispute DML's showing as to the likelihood of success on appeal, Bellamah pointed to numerous allegations which DML failed to address in its motion. These allegations establish that (1) Bellamah's negligence claim was not solely based on the firm's failure to appeal and was therefore not an issue of law but an issue of fact not suitable for summary judgment, and (2) other genuine issues of material fact existed as to the numerous allegations left unaddressed by DML. While DML addressed some of Bellamah's additional allegations in its Reply Brief in Support of Motion for Summary Judgment, Bellamah did not have an opportunity to respond to these arguments and the evidence DML raised. *See WLW Realty Partners, LLC v. Cont'l Partners VIII, LLC*, 2015 MT 312, ¶ 20, 381 Mont. 333, 360 P.3d 1112 (noting fairness to the parties generally dictates that district courts not grant summary judgment to moving party based on legal or evidentiary arguments raised for the first time in reply briefs); *Tags*

16

*Realty, LLC v. Runkle*, 2015 MT 166, ¶ 10, 379 Mont. 416, 352 P.3d 616 (holding summary judgment improper where non-movant did not have opportunity to respond). Requiring Bellamah to have produced expert testimony in response to DML's principal brief would put the cart miles ahead of the horse. Summary judgment is not a procedural device that allows a movant to narrowly address a single allegation under an inapplicable legal theory as a means of forcing a non-movant to fully try their case before discovery has even closed. Accordingly, Bellamah met the Rule 56 burden in responding to DML's motion for summary judgment, which had been narrowly framed around an inapplicable theory of causation.

## CONCLUSION

¶30 Bellamah's claim of negligence was not solely based on DML's failure to appeal but encompassed numerous allegations of pre-appeal negligent conduct. Not only did these allegations preclude application of *Richards*, but genuine issues of fact precluded summary judgment as to DML's negligence. Accordingly, the District Court erred in granting summary judgment to DML. We therefore reverse and remand for further proceedings.

/S/ INGRID GUSTAFSON

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ KATHERINE M. BIDEGARAY
/S/ JIM RICE


Justice Beth Baker has recused herself and has not participated in this matter.

17